THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WENDY LEE MOORHEAD, Defendant-Appellant.

Second District   No. 2—83—1013

Opinion filed October 15, 1984.—Rehearing denied November 20, 1984.

G. Joseph Weller and Josette Skelnik, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Phyllis J. Perko and Judith M. Pietrucha, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Wendy Lee Moorhead, was charged by information with solicitation ·to commit murder (Ill. Rev. Stat. 1983, ch. 38, par. 8—1(a)) in that she, with the intent to commit murder (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(a)(1)), requested Paul Olson, a special agent with the Illinois Department of Law Enforcement, to kill her husband, John Moorhead. Following a mistrial in her original trial when the jury was unable to reach a verdict, she was found guilty of that offense in a second jury trial. Defendant was subsequently sentenced to a 25-year term of imprisonment.

Two issues are raised on appeal: (1) whether defendant was denied her constitutional rights to proportionate penalties and due process of law where the maximum penalty provided for solicitation to commit murder, 30 years, is more severe than the maximum penalty provided for conspiracy to commit murder, 7 years, since, she contends, solicitation is a less serious offense; and (2) whether the 25-year sentence of imprisonment is excessive.

Preliminarily, we consider the State's contention that the constitutional issue has been waived by defendant's failure to raise it in the trial court. While the general rule is that the failure to raise the issue of a statute's constitutionality in the trial court is a waiver of that issue on review (*People v. Amerman* (1971), 50 Ill. 2d 196, 279

N.E.2d 353; *People v. Luckey* (1969), 42 Ill. 2d 115, 245 N.E.2d 769; *People v. Coleman* (1983), 120 Ill. App. 3d 851, 459 N.E.2d 5), it has been held that where the conviction was under an unconstitutional statute, it is a nullity, and there is no need for a defendant to preserve the error by post-trial motion since the conviction is void and can be attacked at any time. (*People v. Wagner* (1982), 89 Ill. 2d 308, 311, 433 N.E.2d 267.) Where, as here, a substantial question of constitutionality is raised, which, if sustained, would make void the applicable statute or a pertinent part thereof, we may decline to apply the waiver rule and address the merits of the contention even though we may upon analysis ultimately reject the contention. (*People v. McNeal* (1983), 120 Ill. App. 3d 625, 627-29, 458 N.E.2d 630; see also *People v. Coleman* (1983), 120 Ill. App. 3d 851, 459 N.E.2d 5.) We decline to apply the waiver rule to the constitutional issue presented here.

Defendant contends that the maximum penalty for solicitation to commit murder is unconstitutional because there is a violation of the due process clause under the Illinois and Federal constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, sec. 2) which, she maintains, require that the statutory scheme of sentencing must be "reasonably designed to remedy the evil at which it is aimed." Defendant also asserts that the policy underlying section 11, article I, of the Illinois Constitution (Ill. Const. 1970, art. I, sec. 11), which provides for penalties to be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship, is violated here. More specifically, defendant argues that conspiracy to commit murder is a more serious offense and presents a greater danger to the public than solicitation to commit murder, yet the maximum penalty for conspiracy to commit murder is imprisonment for seven years, while the maximum penalty for solicitation to commit murder is imprisonment for 30 years.

Several arguments are advanced by defendant to support her theory that conspiracy to commit murder is the more serious offense. Defendant states that while in both solicitation and conspiracy the prosecution must prove the defendant had the intent to commit the offense of murder, the offense of conspiracy not only requires the involvement of two or more persons, but also requires the commission of an act in furtherance of the agreement to commit murder. She also contends that two or more individuals agreeing to act in concert to commit an offense presents a greater threat to the public than one acting alone and a greater likelihood that the object offense will actually be committed.

The State basically contends that from the statutory definitions of

both offenses it cannot be determined that solicitation is a less serious offense, and looking to the penalties provided it is clear that the legislature has determined that solicitation to commit murder is more serious than conspiracy to commit murder. Thus, the State argues that courts should not interfere with this legislative authority unless the challenged penalty is clearly in excess of the very broad and general constitutional limitations applicable.

The elements of the offense of solicitation are:

"A person commits solicitation when, with intent that an offense be committed, he commands, encourages or requests another to commit that offense." (Ill. Rev. Stat. 1983, ch. 38, par. 8—1(a).)

The elements of the offense of conspiracy are:

"A person commits conspiracy when, with intent that an offense be committed, he agrees with another to the commission of that offense. No person may be convicted of conspiracy to commit an offense unless an act in furtherance of such agreement is alleged and proved to have been committed by him or by a co-conspirator." (Ill. Rev. Stat. 1983, ch. 38, par. 8—2(a).)

The penalty for solicitation is as follows:

"A person convicted of solicitation may be fined or imprisoned or both not to exceed the maximum provided for the offense solicited: Provided, however, the penalty shall not exceed the corresponding maximum limit provided by subparagraph (c) of Section 8—4 of this Act, as heretofore and hereafter amended." (Ill. Rev. Stat. 1983, ch. 38, par. 8—1(b).)

As set forth in the penalty section for solicitation, the maximum penalty is linked to the corresponding maximum penalty for the offense of attempt, which is as follows:

"A person convicted of an attempt may be fined or imprisoned or both not to exceed the maximum provided for the offense attempted but, except for an attempt to commit the offense defined in Section 33A-2 of this Act,

(1) the sentence for attempt to commit murder is the sentence for a Class X felony;

(2) the sentence for attempt to commit a Class X felony is the sentence for a Class 1 felony;

(3) the sentence for attempt to commit a Class 1 felony is the sentence for a Class 2 felony;

(4) the sentence for attempt to commit a Class 2 felony is the sentence for a Class 3 felony; and

(5) the sentence for attempt to commit any felony other than

those specified in Subsections (1), (2), (3) and (4) hereof is the sentence for a Class A misdemeanor." (Ill. Rev. Stat. 1983, ch. 38, par. 8—4(c).)

The penalty for conspiracy is as follows:

"A person convicted of conspiracy may be fined or imprisoned or both not to exceed the maximum provided for the offense which is the object of the conspiracy, except that if the object is an offense prohibited by Sections 11—15, 11—16, 11—17, 11—19, 24—1(a)(1), 24—1(a)(7), 28—1, 28—3 and 28—4 of the 'Criminal Code of 1961', approved July 28, 1961, as amended or prohibited by Sections 401, 402, 403, 404, 406(b) or 407 of the 'Illinois Controlled Substances Act', enacted by the 77th General Assembly, or an inchoate offense related to any of the aforesaid principal offenses the person convicted may be sentenced for a Class 3 felony however, conspiracy to commit treason, murder, or aggravated kidnapping shall not be sentenced in excess of a Class 2 felony, and conspiracy to commit any offense other than those specified in this subsection shall not be sentenced in excess of a Class 4 felony." (Ill. Rev. Stat. 1983, ch. 38, par. 8—2(c).)

From a comparison of these provisions, it is apparent, as defendant asserts, that the maximum penalty provided for solicitation to commit murder, upon reference to the penalty for attempt, is the maximum sentence for a Class X felony, which is 30 years, whereas the maximum penalty for conspiracy to commit murder is not in excess of the maximum penalty for a Class 2 felony, which is seven years.

■■ Until adoption of the Criminal Code of 1961, solicitation was not a statutory offense in Illinois but was recognized as a common law offense. Our supreme court held in *People v. Stroner* (1983), 96 Ill. 2d 204, 449 N.E.2d 1326, that solicitation is not a lesser included offense of conspiracy. (96 Ill. 2d 204, 209-10, 449 N.E.2d 1326.) Solicitation requires a command, encouragement, or request of another to commit a crime; conspiracy requires an agreement to commit a specific crime and an overt act in furtherance of the agreement. (96 Ill. 2d 204, 209, 449 N.E.2d 1326.) In a conspiracy, one person may tell another he is going to commit a crime and the other person may volunteer to join in its commission without being commanded, encouraged or requested to do so. (96 Ill. 2d 204, 209-10, 449 N.E.2d 1326.) Neither solicitation nor conspiracy is a lesser included offense of the other. *People v. Latham* (1979), 73 Ill. App. 3d 995, 997, 392 N.E.2d 43.

The Illinois conspiracy statute encompasses the bilateral theory of

conspiracy requiring the actual agreement of at least two participants. (*People v. Foster* (1983), 99 Ill. 2d 48, 457 N.E.2d 405.) The solicitation statute embraces virtually every situation in which one could be convicted of conspiracy under the unilateral theory. (99 Ill. 2d 48, 53, 457 N.E.2d 405.) It can thus be seen that the two inchoate offenses address distinct conduct.

Examination of the statutory provisions for penalties for solicitation and conspiracy since enactment of the Criminal Code of 1961 reveals the following. Upon adoption of the Criminal Code in 1961, the penalty section for solicitation provided that no fine or imprisonment could exceed the maximum provided for the offense solicited, except that no penalty could exceed imprisonment for one year. (Ill. Rev. Stat. 1961, ch. 38, par. 8—1(b).) The applicable penalty for conspiracy in the Criminal Code of 1961 provided, in pertinent part, that no fine or imprisonment could exceed the maximum provided for the offense which is the object of the conspiracy, except that no penalty for conspiracy to commit murder shall exceed imprisonment for 20 years. (Ill. Rev. Stat. 1961, ch. 38, par. 8—2(c).) In 1967, the penalty provision for solicitation was amended to delete the one-year maximum limitation and substitute the language, still present, which provides that "the penalty shall not exceed the corresponding limit provided by subparagraph (c) of Section 8—4 of this Act, as heretofore and hereafter amended." (Ill. Rev. Stat. 1967, ch. 38, par. 8—1(b).) The maximum penalty for attempt to commit murder in 1967 was imprisonment not to exceed 20 years. It can be seen that while in 1961 solicitation carried a less severe sentence than conspiracy, in 1967 the penalty for solicitation became linked with that for attempt, and in 1967 the maximum penalty for both solicitation to commit murder and conspiracy to commit murder became the same.

Following the adoption of the Unified Code of Corrections in July 1972 and corresponding amendments to the penalty provisions of the Criminal Code, the attempt penalty provisions were amended to provide, *inter alia*, that the maximum penalty for attempt to commit murder shall not exceed a Class 1 felony. (Ill. Rev. Stat. 1973, ch. 38, par. 8—4(c).) The conspiracy penalty provisions were amended to provide, *inter alia*, that the maximum penalty for conspiracy to commit murder shall not exceed a Class 2 felony. (Ill. Rev. Stat. 1973, ch. 38, par. 8—2(c).) Public Act 80—1099, effective February 1, 1978, substituted "Class X" for "Class 1" in the attempt-to-commit murder provision. Thus, as it stands now, solicitation to commit murder, which by statutory references corresponds to the penalty for attempted murder, has a maximum sentence not to exceed the sentence for a Class

X felony, 30 years, and conspiracy to commit murder has a maximum penalty not in excess of a Class 2 felony, 7 years.

The committee comments to the Criminal Code of 1961 for the inchoate offenses of solicitation and conspiracy do not disclose any indication of which offense is more serious, nor do they comment on the difference in penalties—the penalty for conspiracy to commit murder being set higher than that for solicitation to commit murder at the time of adoption of the Code. Also, we have been unable to find any legislative history which might reveal any floor debate of legislative intent when the maximum penalties for solicitation were made to correspond to that of attempt in 1967 or when the maximum penalty for solicitation to commit murder became higher in 1973, and again in 1978, than the maximum penalty for conspiracy to commit murder.

It is a settled rule of law that the legislature has the authority to set the nature and extent of penalties. (*People ex rel. Carey v. Bentivenga* (1981), 83 Ill. 2d 537, 542, 416 N.E.2d 259.) Courts will not interfere with such legislation unless the challenged penalty is clearly in excess of the very broad and general constitutional limitations applicable. (83 Ill. 2d 537, 542, 416 N.E.2d 259.) The legislature's power to fix penalties is, however, subject to the constitutional proscription found in section 2 of article I of the Illinois Constitution, which prohibits the deprivation of liberty without due process of law. (*People v. Bradley* (1980), 79 Ill. 2d 410, 417, 403 N.E.2d 1029.) As our supreme court stated in *Heimgaertner v. Benjamin Electric Manufacturing Co.* (1955), 6 Ill. 2d 152, 128 N.E.2d 691,

> "We have consistently stated that the standard of a proper exercise of the police power is whether the statute is reasonably designed to remedy the evils which the legislature has determined to be a threat to the public health, safety and general welfare. *Vissering Mercantile Co. v. Annunzio*, 1 Ill. 2d 108; *Stewart v. Brady*, 300 Ill. 425; *City of Belleville v. St. Clair County Turnpike Co.* 234 Ill. 428." (6 Ill. 2d 152, 159, 128 N.E.2d 691.)

The test focuses on the purposes and objectives of the enactments in question. *People v. Bradley* (1980), 79 Ill. 2d 410, 417, 403 N.E.2d 1029.

Where the legislature clearly intends to punish one offense more severely than another, the constitutional guarantee of due process is violated if the penalty prescribed for the more serious offense is not as great or greater than the penalty prescribed for a less serious offense. In such circumstances, the enactment is not reasonably designed to remedy the evil which the legislature determined to be a

greater threat to the public. *People v. Wagner* (1982), 89 Ill. 2d 308, 312-13, 433 N.E.2d 267; *People v. Bradley* (1980), 79 Ill. 2d 410, 417-19, 403 N.E.2d 1029; *cf. People v. Wisslead* (1983), 94 Ill. 2d 190, 196, 446 N.E.2d 512 (unconstitutionally disproportionate penalties).

Unlike the clear legislative purpose and objective found to be present in *People v. Bradley* (1980), 79 Ill. 2d 410, 403 N.E.2d 1029 (intent that those who traffic in drugs should be subject to more severe penalty than those who possess them), defendant has not cited nor have we found any express indication by the Illinois legislature that either solicitation or conspiracy is a greater threat to the public than the other offense. What is present, however, is the legislative prescription of penalties for both offenses that provides for a more severe penalty for solicitation to commit murder than for conspiracy to commit murder. As stated above, under the State's police power the legislature has wide discretion to prescribe penalties for defined offenses.

In an effort to determine whether the solicitation statute is reasonably designed to remedy the evil which the legislature has determined to be a threat to the public health, safety, and general welfare, we have also consulted text material on the subject. According to M. Bassiouni:

> "Authorities are not always in agreement as to whether solicitation in and of itself presents a genuine social danger. On the one hand, the solicitor can be thought to show a reluctance to do the crime himself and has the benefit of an independent agent between himself and the crime and, therefore, is of small import as a social menace. Others indicate that the true significance of solicitation is a more sophisticated and well thought out scheme to effectuate a crime and hence more dangerous to society because the actor is shielded by his hireling." (M. Bassiouni, Substantive Criminal Law 223 (1978).)

It has also been stated that solicitation is, if anything, more dangerous than a direct attempt because it may give rise to cooperation among criminals, which is a special hazard. The solicitor working his way through one or more agents manifests an approach to crime more intelligent and masterful than the efforts of his hireling. W. LaFave & A. Scott, Criminal Law sec. 58, at 416 (1972).

The Model Penal Code grades for sentencing purposes the offenses of attempt, solicitation, and conspiracy as the same. (Model Penal Code sec. 5.05 (1962).) The comments to the Model Penal Code indicate that prevailing law reflects no general or coherent theory in determining the sanctions that are authorized upon conviction of at-

tempt, solicitation, or conspiracy. Model Penal Code sec. 5.05, comments, at 174-75 (Tent. Draft No. 10, 1960).

From these sources and considering the Illinois legislative scheme of penalties prescribed for solicitation and conspiracy, we are not persuaded by defendant's argument that conspiracy presents a more serious threat to the public than solicitation. The due process provision of the Illinois Constitution is not violated where the statute is reasonably designed to remedy the evil which the legislature determined to be a threat to the public health, safety, and general welfare.

Although defendant argues that a greater threat to the public is posed in a conspiracy where two or more persons are involved and that there is a greater likelihood the offense will be committed, the offense of solicitation addresses at least an equally dangerous evil. The person who solicits another by command, encouragement, or request to commit murder generally represents a more sophisticated and planned criminal intent by an actor who attempts to shield himself through his hireling. Imposition of a severe penalty for criminal solicitation may be an important means by which the leadership of a criminal movement may be suppressed. The offense of conspiracy is aimed at group criminality, an evil to the public distinct from solicitation. Although conspiracy requires an act in furtherance of the agreement to the commission of the offense, which is not required in solicitation, the solicitation to commit a crime itself is the serious act sought to be prevented by the legislation.

■ In conclusion, we do not find that the legislative scheme of penalties for solicitation and conspiracy is violative of the due process clause of the Federal or Illinois constitutions. Although defendant also stated in her brief that section 11 of article 1 of the Illinois Constitution providing that "[a]ll penalties shall be determined both according to the seriousness of the offense and the objective of restoring the offender to useful citizenship" is violated under this legislation, counsel for defendant agreed at oral argument that this constitutional provision is only supportive of the due process provision, and defendant is not raising this as a separate argument. In any event, we conclude that both offenses are serious and the legislature, within its broad authority to set penalties, has not violated the Illinois Constitution.

■ Defendant's only other contention raised on this appeal is that her 25-year sentence of imprisonment is excessive. She contends that in the light of her youth, age 24, her lack of any prior adult or juvenile criminal record, her history of alcohol abuse and psychiatric problems, her potential for rehabilitation as evinced by her efforts towards counselling while incarcerated, and the general circumstances

of the offense itself, she should not have received nearly the maximum term of imprisonment, and this court should reduce her sentence.

We briefly set forth the relevant facts adduced at trial. Sam Korcovelos, defendant's hair stylist, testified that at one of her appointments defendant told him she did not want her hair cut but wished to discuss a problem. She told Korcovelos that she wanted to get rid of her husband, and that she did not want a divorce, she wanted him killed. She left a telephone number and said he could call her if he located somebody to do it. Korcovelos said defendant may have been drinking, but he could not smell anything on her breath. Defendant came in the following week and wanted to know if Korcovelos had located someone. Korcovelos had previously called the police, and acting under their instructions, he told her yes, he had, and she would be contacted. On this second occasion, defendant showed Korcovelos a notebook with instructions on what she needed to do before and after the killing.

Donna Clouse, a friend of defendant, testified that defendant called her to tell her she was making arrangements to have her husband murdered. During her several conversations with defendant regarding the murder plan, Clouse believed defendant was not drinking. Defendant did ask Clouse to come over to her house on Sunday and be her alibi.

Paul Olson, special agent for the Illinois Department of Law Enforcement, testified that he got defendant's telephone number from Korcovelos and called her, introducing himself as Paul, Sam's friend. In a subsequent call, he told defendant he needed an itinerary of her husband's activities, photographs of her husband, and $500 for a down payment. Two days later, he and other agents and police officers went to the Travelodge. The others were in an adjoining room monitoring a recording of the transaction. Olson called defendant from the motel. Defendant told him she had $400 but would have to cash a check for another $100. Olson told her that $400 would be sufficient, and about 10 minutes later defendant arrived at the motel.

The jury viewed the videotape of the transaction. A review of the videotape discloses that defendant presented Olson with $400, her husband's itinerary, and photographs, explaining that although he had a beard in the pictures, he had recently shaved it off, but there was no way Olson could miss him because he would be wearing his white uniform. Defendant stated that she wanted it done on Sunday at 12 o'clock, when her husband got off duty, because it was late at night and could be made to look like a mugging; that she wanted him killed;

that she had no regrets, no conscience; that she sounded cold-hearted; that Olson could just shoot him; that she had worked out every detail; that she wanted the insurance money and she wanted him out of her life; that there was only $30,000 in insurance money, so it was not really the money, she wanted to be free; that he was going to take her little boy and could, because of her prior stays in mental institutions, so there was no way for divorce; that she hated him and wanted him dead; that she was totally selfish; that she realized that if he survived, she would go to prison for life; that she was very determined and would not change her mind; that she had all the money spent; that she had no drug or alcohol problems and no mental problems except being selfish; that she was unhappy and this would make her happy; that she was not a remorseful person; that she was an excellent actress and an excellent liar; that she was really excited, not scared, and could not believe it was finally going to happen; and that he was a bore and she hated him.

After the videotape had been shown, Olson further stated that after she exited the motel room, defendant was arrested. In a blue notebook found in defendant's purse were lists of things to purchase and things to do after her husband was dead.

Defendant testified that she had been drinking prior to visiting her hairdresser, was very upset, and said she needed to get rid of her husband; that he told her she should come back and she did, again after she had been drinking; that he said he had contacted this person who was a professional Mafia hit man and that she'd better be deadly serious or there'd be trouble for her; that during those conversations, she never intended to go through with the plan; that the videotape was an accurate description of the meeting but that she didn't intend to go through with the plan; that after hearing a Chicago Mafia hit man had been contacted, she was scared for her own life and her son's life and afraid the man would think she was trying to set him up or get him arrested; that she intended to stop it on Sunday at the last minute; and that the list of things to do was prepared in case something was to happen to her husband and she did not anticipate something happening to her husband.

At the sentencing hearing, neither side presented evidence, although a presentence report, a letter from Dr. Leo G. Goldman, a letter from a clinical social worker at the Lake County jail, a hospital report, and letters from defendant and her parents were submitted. The trial judge stated that he had read the presentence report and all accompanying letters; that in considering the statutory factors in mitigation, there was no history of prior criminal activity and he would

like to find no threat of serious physical harm and an unlikelihood to recur, but he was not sure that under the circumstances those findings would be appropriate; that he had seen the videotape, and defendant had the opportunity to back out; that there was no question that defendant intended her husband to be dead; that imprisonment was necessary for the protection of the public; and that even if probation were allowed it would deprecate the seriousness of the offense. Defendant was then sentenced to a 25-year term of imprisonment.

Our supreme court has repeatedly emphasized the undesirability of a reviewing court's simply substituting its judgment or preference as to punishment for that of the sentencing court. The trial judge is ordinarily best situated to tailor a sentence or other disposition to the needs of the case. He balances the appropriate factors in imposing sentence, and the exercise of the discretion should not be altered upon review absent an abuse of that discretion. *People v. Hicks* (1984), 101 Ill. 2d 366, 375, 462 N.E.2d 473.

The record discloses that the trial court examined the statutory factors in aggravation and mitigation, specifically stating that defendant had no prior history of criminal activity, that defendant's conduct threatened serious physical harm, that it could not say that it was unlikely to recur, and that sentence was necessary to deter others from committing the same crime. Apparently concerning the sentencing factor of excessive hardship on her dependent, the trial judge said that defendant wanted him to be concerned about her son's losing a mother but that defendant was not concerned about her son's losing a father. Defendant stood to collect $30,000 in insurance proceeds and had already decided how those proceeds would be spent. She had meticulously thought out what needed to be done before and after her husband's death.

While the letters, psychological reports, absence of prior criminal activity, youth and history of alcohol abuse may have been mitigating factors, there is no indication in the record that the trial court failed to consider them. Where mitigation evidence is before the court, it is presumed that the sentencing judge considered the evidence, absent some indication, other than the sentence imposed, to the contrary. (*People v. Bergman* (1984), 121 Ill. App. 3d 100, 109, 458 N.E.2d 1370.) Furthermore, the factors in mitigation must be offset by defendant's own statements on the videotape, where, among other things, she admitted to being an excellent liar and actress, where she denied that she would ever have any remorse, and where she stated that she had no regrets, no conscience. Although defendant contends the severe sentence indicates the court failed to give adequate consid-

eration to her rehabilitation potential, we are convinced that on this record the trial judge incorporated all the information provided at the sentencing hearing, which included her rehabilitative potential, in his sentencing decision. See *People v. Bergman* (1984), 121 Ill. App. 3d 100, 109-10, 458 N.E.2d 1370.

It is apparent from the evidence at trial and the trial judge's remarks at sentencing that the defendant had carefully calculated to have her husband killed and took the necessary steps over a period of time to solicit someone to commit murder. She also made plans for an alibi. The videotape of her arrangements for the murder of her husband graphically and vividly depicted her intent and attitude towards her crime and the consequences of it. Although the 25-year sentence was near the maximum penalty for this offense, under all the circumstances shown by this record we find no abuse of the trial judge's sentencing discretion.

Affirmed.

LINDBERG and HOPF, JJ., concur.