THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MATIAS ORTIZ, Defendant-Appellant.

Second District No. 2—86—0166

Opinion filed May 18, 1987.—Rehearing denied June 16, 1987.

G. Joseph Weller and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE NASH delivered the opinion of the court:

After a jury trial defendant, Matias Ortiz, was convicted of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12–14(b)(1)) and sentenced to a term of 25 years' imprisonment. He appeals, contending (1) the aggravated criminal sexual assault statute is unconstitutional; (2) the jury was not properly instructed; (3) the admission of evidence relating to defendant's prior conviction was error; and (4) that he was denied effective assistance of counsel in trial.

On August 30, 1985, Jenna, who was 8½ years old, stayed overnight at the home of her friends, Tina and Trisha Van Hoose, and slept on a mattress on the floor of a bedroom. Defendant, who was Trisha's father and the fiance of Joyce Van Hoose, entered the bedroom at 5 a.m. and, according to Jenna, molested her.

Defendant was subsequently charged with two counts of aggravated criminal sexual assault and, at trial, Jenna testified that he came into the bedroom and knelt next to her mattress, then lifted her nightgown and hurt her by inserting his finger inside her vagina and anus. She kicked at him, and defendant left the room, after which Jenna went to the living room where Joyce Van Hoose (Tina and Trisha's mother) was sleeping and informed her of the incident. Jenna stated no one had ever touched her in that way before. On cross-examination, she testified that defendant did not hold her down on the mattress and no blood or other fluid emerged after the incident. Jenna did not tell her mother about the attack until several hours after she returned home the next day, and her mother did not examine her.

Janice Cagle, Jenna's mother, testified that after she learned of the incident, she called a social worker, Linda Sutton, who took Jenna to the police station. Cagle stated that, to her knowledge, Jenna's hymen had not been broken prior to this incident.

Dr. Paul Cole, an emergency room physician at Central Du Page Hospital, examined Jenna several days later on September 4, 1985. He testified that her hymen had a small tear which was large enough to admit the tip of a finger. Although such tears always result in bleeding, there was no evidence of bruises, scratches, or bleeding at that time. Dr. Cole stated that scratches and bruises may fully heal within four or five days. He further testified that the hymen of an 8-year-old girl has more blood flowing through it than that of an older woman and there was no evidence of blood in Jenna's urinary tract, which was not unusual if the tear had occurred four or five days prior to his examination.

David Day, an officer with the Carol Stream police department,

testified that defendant told him that he was intoxicated and had suffered a blackout on the evening of August 30, 1985. On cross-examination by defendant's counsel, Day stated he had been a prison guard and was aware that defendant had recently been in prison. When defendant denied sexually assaulting Jenna, saying he "wasn't that kind of person," Day told defendant that he had information that defendant had pleaded guilty in a similar situation five years before to charges involving his daughter. On redirect examination by the State, Day testified that defendant had engaged in an incestuous relationship with his daughter for four years, until she was 13 years old, and that in September 1980, defendant's daughter and estranged wife reported him to the police, and defendant was arrested for aggravated incest. Defendant was convicted and was subsequently paroled from the State penitentiary in January 1985. On further examination by defendant's counsel, Officer Day testified that, according to the police reports, defendant said he had pleaded guilty at that time so that his family would not have to go through a trial.

Defendant testified in trial on his own behalf that he was intoxicated on August 30, 1985, and went to the apartment of Joyce Van Hoose, his fiancee, at approximately 1:30 a.m. Later that morning, he awoke to use the bathroom and mistakenly opened the door to the girls' bedroom. He walked in, stumbled over the mattress on the floor, and fell on top of Jenna. He stated Jenna seemed scared, and he apologized to her and left the room. He denied inserting his finger into her vagina or anus. Defendant further testified that on September 5, 1985, Detective Day had come by to speak with him and the officer appeared to be frightened of defendant and hated him. Defendant told Officer Day that Jenna's allegations were lies, but Day claimed that a doctor had found scratches and other evidence on Jenna. On cross-examination, defendant testified that Day believed defendant had molested Jenna because defendant had been convicted of a similar charge involving his daughter in 1980.

Anita Beal, a nurse, testified that Jenna told her during the September 4 examination that the man who had touched her had grabbed her and thrown her onto a bed.

Joyce Van Hoose testified that Jenna indicated she had merely been touched "up front and on the side of her right hip" and did not say that defendant had inserted his finger in her or had hurt her. Joyce Van Hoose stated that she was unable to find any blood or other discharge on Jenna's nightgown or mattress. On cross-examination, she stated that she had seen defendant lying facedown on the mattress with his hand touching Jenna's hair earlier in the evening.

In rebuttal, over defendant's objection, the trial court admitted in evidence a certified copy of defendant's prior conviction for the offense of indecent liberties with a child.

The jury found defendant not guilty of anal penetration but guilty of aggravated criminal sexual assault by vaginal penetration, and he was sentenced to a term of 25 years' imprisonment. This appeal followed.

■ Defendant first contends that the aggravated criminal sexual assault statute (Ill. Rev. Stat. 1985, ch. 38, par. 12—14) and its related provisions are so unreasonable as to violate due process. Defendant was convicted under subsection (b)(1) of the statute, which provides,

"The accused commits aggravated criminal sexual assault if:
(1) the accused was 17 years of age or over and commits an act of sexual penetration with a victim who was under 13 years of age when the act was committed." (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(b)(1).)

Defendant argues that "sexual penetration," which by definition includes "any contact, however slight" (Ill. Rev. Stat. 1985, ch. 38, par. 12—12(f)), is indistinguishable from "sexual conduct," which is defined as "touching or fondling" (Ill. Rev. Stat. 1985, ch. 38, par. 12—12(e)), although an act of sexual penetration is a more serious offense and carries a higher penalty.

Defendant's constitutional arguments were not raised in the trial court and may be considered waived on appeal. (*People v. Arnold* (1984), 104 Ill. 2d 209, 217, 470 N.E.2d 981; *People v. Hartfield* (1985), 137 Ill. App. 3d 679, 690, 484 N.E.2d 1136, *appeal denied* (1986), 111 Ill. 2d 575.) However, we decline to apply the waiver rule since the issue raises a substantial question of constitutionality which, if sustained, would void the statute under which defendant was convicted. See *People v. Moorhead* (1984), 128 Ill. App. 3d 137, 139, 470 N.E.2d 531; *People v. McNeal* (1983), 120 Ill. App. 3d 625, 627, 458 N.E.2d 630, *appeal denied* (1984), 99 Ill. 2d 532.

This court considered the constitutionality of this statute in *People v. Burmeister* (1986), 147 Ill. App. 3d 218, 222-23, 497 N.E.2d 1212, *appeal denied* (1987), 113 Ill. 2d 577, and determined that it did not fail to constitutionally distinguish the lesser offense from the greater offense. The court noted that the definition of sexual penetration requires that the offending contact be between the sex organ of one person and the sex organ, mouth, or anus of another person, while the touching or fondling of the sex organs, anus, or breast of the victim included in the term sexual conduct may be done with the hands

or other part of the accused. This court concluded that a significant distinction existed between the two definitions in that an act of sexual penetration would "generally be a greater affront to the personal dignity of the victim" than would an act of sexual conduct (147 Ill. App. 3d 218, 223, 497 N.E.2d 1212) and that the alleged similarity of the terms did not cause the statute to be an unreasonable exercise of the State's police power. For these same reasons, we find that the statutory definitions are not so unreasonably similar as to violate due process. See also *People v. Server* (1986), 148 Ill. App. 3d 888, 902, 499 N.E.2d 1019 (fact that defendant's conduct could be construed as either sexual conduct or sexual penetration under the statutory definitions did not constitute a denial of due process); *People v. Hope* (1986), 142 Ill. App. 3d 171, 175, 491 N.E.2d 785, *appeal denied* (1986), 112 Ill. 2d 563 (definition of sexual penetration as "any contact, however slight" was not violative of due process, though contrary to the common meaning of penetration); *People v. Hengl* (1986), 144 Ill. App. 3d 405, 408, 494 N.E.2d 937, *appeal denied* (1986), 112 Ill. 2d 585 (criminal sexual assault statutes did not violate due process by failing to provide a reasonable distinction for the aggravating factor).

■ Defendant also contends that the statutory provisions are unconstitutional because sexual penetration, which is generally punished more severely, does not require a specific mental state, while the definition of sexual conduct requires that the touching or fondling be either "intentional or knowing" and "for the purpose of sexual gratification or arousal of the victim or the accused." (Ill. Rev. Stat. 1985, ch. 38, par. 12—12(e).) In support of this argument, defendant cites *People v. Wick* (1985), 107 Ill. 2d 62, 66, 481 N.E.2d 676, where our supreme court held that the aggravated arson statute violated due process by punishing innocent as well as culpable conduct because it did not require an unlawful purpose on the part of a person setting a fire.

This same issue was also addressed in *People v. Burmeister* (1986), 147 Ill. App. 3d 218, 223-24, 497 N.E.2d 1212, where this court held that a mental state of either intent, knowledge, or recklessness would be implied for offenses involving sexual penetration and that the statute thus did not punish innocent conduct or set up an unconstitutional anomaly between the lesser and greater offenses. (147 Ill. App. 3d 218, 224, 497 N.E.2d 1212.) This reasoning also obtains in the present case and we find that the criminal sexual assault provisions do not violate due process on this ground.

■ Next, defendant contends the trial court erred in failing to in-

struct the jury that the State was required to prove that defendant intentionally committed the offense. The jury was instructed, in accordance with section 12—14(b)(1) of the Criminal Code of 1961, that a person commits the offense of aggravated criminal sexual assault if he was 17 years of age or over and commits an act of sexual penetration with a victim who was under 13 years of age when the act was committed. However, the indictment charging defendant with the offense alleged that he "intentionally committed an act of sexual penetration." Defendant argues that, as charged, intent was an essential element of the offense and the failure to properly instruct the jury on this element constituted fundamental error.

This issue was not raised at trial or in a post-trial motion and is considered waived on appeal. (*People v. Hicks* (1984), 101 Ill. 2d 366, 371, 462 N.E.2d 473; *People v. Hollins* (1985), 136 Ill. App. 3d 1, 9, 482 N.E.2d 1053.) In any event, it has been determined that an offense involving sexual penetration is a general intent crime such that a mental state of either intent, knowledge, or recklessness will be implied to satisfy the general intent requirement. (*People v. Burmeister* (1986), 147 Ill. App. 3d 218, 224, 497 N.E.2d 1212.) An examination of approved jury instructions relating to sex offenses demonstrates that instructions defining general intent offenses need not set forth a specific mental state (see Illinois Pattern Jury Instructions, Criminal, Nos. 9.01 (rape), 9.04 (deviate sexual assault), 9.07 (indecent liberties with a child), 9.27 (aggravated incest) (2d ed. 1981)), and we conclude that the trial court did not err in failing to *sua sponte* instruct the jury as to defendant's mental state in this case.

■ Defendant further argues that the fact that the State charged defendant with "intentionally committing an act of sexual penetration" in the indictment estops it from now asserting that any other general intent mental state may be used to justify the verdict, citing *People v. Lemcke* (1980), 80 Ill. App. 3d 298, 300-01, 399 N.E.2d 677. In that case, the defendant was charged by information with submitting to an act of lewd fondling with the intent to arouse or to satisfy his own sexual desires, but the evidence showed that the defendant lacked the intent to arouse or satisfy his sexual desires. The State noted that a person may commit the offense of indecent liberties with a child to satisfy the sexual desires "of either the child or the person or both" (Ill. Rev. Stat. 1977, ch. 38, par. 11—4(a)(3)) and argued that defendant's conviction should be sustained based on evidence of his intent to arouse the sexual desires of the child. However, the reviewing court held that the information, which specifically charged the defendant with the intent to arouse his own desires, precluded the State

from relying on the alternate mental state provided in the statute. *People v. Lemcke* (1980), 80 Ill. App. 3d 298, 301, 399 N.E.2d 677.

We do not regard *Lemcke* as dispositive of the issue in the present case. Here, the aggravated criminal sexual assault statute and its definition of sexual penetration do not refer to a specific mental state. Unlike the information in *Lemcke*, the indictment here did not represent an express choice on the part of the State to charge defendant with having a particular mental state from among the other possible alternatives set out in a statute. Nor does defendant suggest that the inclusion of the term "intentionally" in the indictment misled him in preparing his defense. Moreover, language unnecessarily included in an indictment may be rejected as surplusage where, as here, all of the essential elements of an offense are charged. (*People v. Figgers* (1962), 23 Ill. 2d 516, 519, 179 N.E.2d 626; *People v. Givens* (1985), 135 Ill. App. 3d 810, 817, 482 N.E.2d 211, *appeal denied* (1985), 111 Ill. 2d 558; see also *People v. Kent* (1974), 18 Ill. App. 3d 357, 359, 309 N.E.2d 715.) We conclude that the language of the indictment did not require that the State's instruction defining the offense also include that language in this case.

■ Defendant next contends that the admission of testimony of details of defendant's prior sexual offense was plain error and requires reversal. Several witnesses, including the defendant, testified as to his prior conviction and, over defendant's objection, a certified copy of the conviction was admitted into evidence. Also, in her closing argument, the prosecutor stated, "Well, ladies and gentlemen, I think you have heard what type of person Mat Ortiz is." Defendant argues this evidence was inadmissible and the cumulative effect of the testimony and the prosecutor's remark resulted in such substantial prejudice to defendant as to entitle him to a new trial.

Preliminarily, we note that defendant's counsel did not object to either the testimony relating to defendant's prior conviction or to the prosecutor alluding to it in argument. Absent a finding of plain error affecting defendant's right to a fair trial, any impropriety must thus be deemed waived. *People v. Struck* (1985), 136 Ill. App. 3d 842, 845-46, 483 N.E.2d 1047, *appeal denied* (1986), 111 Ill. 2d 578; *People v. Piscotti* (1985), 136 Ill. App. 3d 420, 440, 483 N.E.2d 363; *People v. Carter* (1984), 129 Ill. App. 3d 1076, 1081, 473 N.E.2d 434, *appeal denied* (1985), 106 Ill. 2d 556.

■ Review of the trial record discloses that a fundamental facet of defendant's theory of the case was his argument that the prosecution against him was based on Detective David Day's alleged vendetta against former convicts. In his opening statement, defense counsel

noted that in Detective Day's conversations with defendant, he had referred to defendant's background and stated, "I know the type of person you are," and had said he would build a case against the defendant. In his cross-examination of Day, defense counsel established that Day had been a prison guard and repeatedly asked Day whether he had told defendant that he knew defendant "was the type of man who would do this because [Day] knew about his being in the penitentiary before." On his own direct examination, defendant testified that Day "thought that I did it because I had a case similar to it, in 1980." Defendant also testified that his fiancee had told him that Day hated him and that Day falsely claimed a doctor had found scratches and other evidence on Jenna's body. In defense counsel's closing argument, he asserted that Detective Day developed a case against defendant based solely on Day's belief that ex-convicts do not reform.

It seems apparent that defendant and his trial counsel advanced a theory at trial that Detective Day had a personal vendetta against defendant and introduced the issue of defendant's prior conviction in furtherance of their defense. Inasmuch as these matters were an integral part of defendant's trial strategy, he cannot now claim to have been improperly or unfairly prejudiced as result of the admission of additional testimony on the issue. Nor can we say that the prosecutor's brief comment on defendant's prior conviction resulted in undue prejudice. When an accused interjects an issue into a case, he cannot then argue that it was error for the State to bring the issue to the jury's attention. *People v. Shaw* (1985), 133 Ill. App. 3d 391, 404, 478 N.E.2d 1142, *appeal denied* (1985), 108 Ill. 2d 583; *People v. Jones* (1983), 119 Ill. App. 3d 615, 628, 456 N.E.2d 926, *appeal denied* (1984), 99 Ill. 2d 532.

■■ ■ Lastly, defendant contends that he was denied his sixth amendment right to effective assistance of counsel. He premises this argument on the failure of his trial counsel to: (1) argue that the aggravated criminal sexual assault statute was unconstitutional; (2) object to the jury instruction defining the offense of aggravated criminal sexual assault; (3) object to testimony by witnesses and remarks by the prosecutor in her closing argument concerning defendant's prior conviction; and (4) seek a continuance or a subpoena in order to obtain a report of an interview with Jenna had by an investigator with the Department of Children and Family Services.

In order to establish ineffective assistance of counsel, defendant must show that counsel committed errors so serious that, judged by an objective standard, counsel's performance was incompetent and

that the errors, in fact, were prejudicial to his defense. (*People v. Collins* (1985), 106 Ill. 2d 237, 273, 478 N.E.2d 267, *cert. denied* (1985), 474 U.S. 935, 88 L. Ed. 2d 274, 106 S. Ct. 267; *People v. Watts* (1985), 139 Ill. App. 3d 837, 845, 487 N.E.2d 1077, *appeal denied* (1986), 111 Ill. 2d 595; *People v. McKendrick* (1985), 138 Ill. App. 3d 1018, 1025, 486 N.E.2d 1297, *appeal denied* (1986), 111 Ill. 2d 593.) A defendant is entitled to competent, not perfect, representation (*People v. Montgomery* (1986), 141 Ill. App. 3d 428, 435, 490 N.E.2d 206, *appeal denied* (1986), 112 Ill. 2d 565; *People v. Puente* (1984), 125 Ill. App. 3d 152, 158, 465 N.E.2d 682), and errors in judgment or trial strategy do not establish incompetency of counsel (*People v. Krankel* (1985), 131 Ill. App. 3d 887, 892, 476 N.E.2d 777; *People v. Lovitz* (1984), 127 Ill. App. 3d 390, 397, 468 N.E.2d 1010, *appeal denied* (1985), 101 Ill. 2d 591).

We have earlier determined that defendant's contentions as to the constitutionality of the aggravated criminal sexual assault statute, the jury instruction upon it, and the prosecutor's comment on defendant's prior conviction during closing argument were without merit. Defendant's trial counsel, therefore, did not act incompetently in failing to raise these objections below. We have also found that defendant's counsel disclosed the fact of defendant's prior conviction to the jury in support of the defense theory of the case and we consider counsel's failure to object to additional questions by the prosecutor and testimony by witnesses on the issue as a matter of trial judgment or strategy, which cannot establish ineffective assistance of counsel. Finally, defendant fails to demonstrate how he suffered prejudice because of trial counsel's failure to obtain the report from the Department of Children and Family Services.

Our review of the record discloses that defendant's trial counsel acted effectively in cross-examining State witnesses, introducing witnesses to refute the child's version of the events that occurred on August 30, 1985, and in his arguments to the jury. We find that defense counsel's performance at trial was not incompetent and prejudicial so as to constitute ineffective assistance of counsel.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

DUNN and HOPF, JJ., concur.