[No. 45489. En Banc. May 17, 1979.]

THE STATE OF WASHINGTON, *Respondent*, v. JOSEPH YANCY, JR., *Appellant*.

154

*Robert Olson* and *Shelley Stark* of *Seattle–King County Public Defender,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *J. Robin Hunt* and *Marsha J. Pechman, Deputies,* for respondent.

*Michael E. Withey* and *Timothy K. Ford* on behalf of American Civil Liberties Union, amici curiae.

ROSELLINI, J.—The appellant was found guilty of violating RCW 9A.88.070(1)(b), which provides:

(1) A person is guilty of promoting prostitution in the first degree if he knowingly:

. . .

(b) Advances or profits from prostitution of a person less than eighteen years old.

RCW 9A.88.060 provides in part:

The following definitions are applicable in RCW 9A.88.070 through 9A.88.090:

. . .

(2) "Profits from prostitution." A person "profits from prostitution" if, acting other than as a prostitute receiving compensation for personally rendered prostitution services, he accepts or receives money or other property pursuant to an agreement or understanding with any person whereby he participates or is to participate in the proceeds of prostitution activity.

The evidence showed that two girls under the age of 18, while living in a hotel room with the appellant, at his invitation, turned over to him their earnings from prostitution, which he spent on the living expenses of the three. While he testified that he contributed his own "earnings" from thievery during the time this living arrangement was conducted, there was evidence from which the jury could infer that at least a part of the earnings of the girls was used for his benefit.

 It is first contended that the statute is void for vagueness. The appellant cites the rule that a penal statute must provide sufficient notice of the proscribed conduct, so that one is not required to speculate as to what is prohibited. *Bellevue v. Miller,* 85 Wn.2d 539, 536 P.2d 603 (1975). A statute will be found invalid if it is couched in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. *Seattle v. Drew,* 70 Wn.2d 405, 423 P.2d 522, 25 A.L.R.3d 827 (1967). As we said there, a penal statute must contain ascertainable standards of guilt.

 The appellant argues that the statutory language is vague because it includes profiting from prostitution within the definition of "promoting" prostitution. The definitions of profits found in *Webster's Seventh New Collegiate Dictionary,* he says, are not broad enough to bring it within the dictionary definition of "promoting."[1] Neither that dictionary nor *Webster's Third New International Dictionary,* which this court generally uses, purports to enumerate all

---

[1] "Webster's Dictionary defines promote, '. . . to contribute to the growth or prosperity of: further (b) to help bring (as an enterprise) into being: launch . . . syn: see advance.' . . .

the activities which may tend to promote a given aim or enterprise. The legislature has found that profiting from the proceeds of prostitution tends to promote it. We are offered no showing that that finding is without foundation. The appellant's theory appears to be that the legislature must adhere strictly to dictionary definitions. No authority is cited for such a proposition. On the contrary, we have recently recognized and followed the rule that the legislature may define a word, giving it a meaning broader than the one it ordinarily carries. *Seattle v. Buchanan,* 90 Wn.2d 584, 584 P.2d 918 (1978).

■■ The statutory definition is couched in simple language readily understandable by a person of ordinary intelligence. It is that definition which must guide his conduct. As we pointed out in *Seattle v. Buchanan, supra,* vagueness which may inhere in the use of a term which is open to various interpretations may be corrected by a legislative definition which gives it a more precise meaning. That is the function which the legislature performed here. The term "promoting prostitution" might indeed have been open to attack for vagueness, had the legislature not precisely defined what conduct it intended to include within its meaning.

The appellant further contends that the words "agreement or understanding," as used in RCW 9A.88.060(2), are unconstitutionally vague because they do not specify whether the agreement or understanding must be formal. The word "understanding," as defined in the appellant's brief, has among its various definitions the one which is appropriate here—that of an informal agreement. The words used by the legislature expressed an intent, which we

---

"All of the dictionary definitions of 'profits' are specific: '1. A valuable return: gain 2.: The excess of returns over expenditure in a transaction or series of transactions; specif: the excess of the selling price of goods over their costs 3.: Net income usually for a given period of time 4.: The ratio of profit for a given year to the amount of capital invested or to the value of sales 5.: The compensation accruing to entrepreneurs for the assumption of risk in business enterprise . . .'" Brief for Appellant, at 15–16.

would think to be readily perceivable—that proof of an informal agreement is sufficient to establish this element of the offense.

The appellant next suggests that the statute is overbroad and impinges his freedom of association, guaranteed by the First Amendment. He cites *Blondheim v. State,* 84 Wn.2d 874, 529 P.2d 1096 (1975), where we said that a statute which is so broadly drawn that it may prohibit constitutionally protected activity, as well as unprotected behavior, denies substantive due process of law. It is suggested that persons engaged in legitimate pursuits who render services to a prostitute and are paid for them out of the prostitute's earnings, or a person living with a prostitute and unwittingly receiving the benefit of his or her earnings could be found guilty of violating this provision.

We do not find the statute open to this construction. In none of the situations hypothesized by the appellant is there an agreement or understanding *whereby* the person is to participate in the proceeds of prostitution activity. With regard to a person rendering services, the agreement is that he is to be paid for his services. It is immaterial to him what the source of the money may be. If there is an agreement whereby he exacts a promise that he will be paid out of the proceeds of prostitution activity, his conduct is no longer innocent, and he can hardly be heard to claim constitutional protection. The same is true with respect to persons living with a prostitute. Unless they accept the proceeds of that person's prostitution pursuant to an agreement to participate in those proceeds, there is no violation.

It is next argued that the legislature did not intend this statute to reach an amateur promoter, such as the appellant, but was aimed only at large commercial enterprises.

No provision of the statute imposing such a limitation upon its scope is cited. It is suggested that a synopsis and commentary found in the Washington State Criminal Justice Training Commission, Revised Criminal Code Training and Seminar Manual (compiled and edited by G. Golob &

G. Mooney (1976)) supports this view. While we think the appellant's interpretation is somewhat doubtful, we will assume it is correct. Nevertheless, the comment reflects nothing more than the personal opinions of the two lawyers who compiled the volume, and they modestly and properly disclaim any "intent or purpose to offer an in depth 'law review' style of analysis of each and every section of law contained in (the title). The document is simply offered as a 'basis for analysis.'" No authorities are cited in connection with the comment on RCW 9A.88.060(2), nor does it purport to interpret any specific language of the act but rather to state what the writers conceive to have been the purpose of the act.

There is nothing in the language of the statute, which we can discern, that limits its application to large commercial enterprises; and the appellant cites no legislative history which would substantiate his claim with respect to its intent. Each of the sections involved here refers to "any person." RCW 9A.04.110 gives the word "person" the usual legal definition including within its meaning "any natural person and, where relevant, a corporation, joint stock association, or an unincorporated association". If the statute was meant to have the narrow meaning suggested by the appellant, that intention was not expressed in the act, and it is to the statute which we must look to find the legislative purpose.

It is next contended that the statute was not intended to punish a person in the appellant's position unless he was in fact supported by the prostitute. He further contends that the evidence did not show that he received such support, since, by his testimony, the appellant contributed more to the expenses of the menage than was derived from prostitution, his contributions being derived from petty thievery. The statute does not require proof that the person charged was supported by the prostitute. What it requires is proof that he participated in the prostitute's earnings. There was undenied testimony in this case that the two girls placed their earnings in the appellant's hands and that he kept

possession of the money and spent it, returning only small sums to them for the purchase of sundries. It appears that all of their earnings, as was the appellant's contribution, were required for living expenses. The jury could reasonably find that the appellant's "earnings" were not sufficient to support him in the style in which he lived during this period of time. That at least some part of the earnings of the two girls was spent for his benefit was also a reasonable inference.

The appellant cites ALI Model Penal Code § 251.2(4) (May 1962 Final Draft), which creates a presumption that one who lives off the earnings of a prostitute is "knowingly promoting prostitution." From this he derives the conclusion that a statute such as RCW 9A.88.070(1)(b) was intended to apply only if the accused was supported by this prostitution.

The fact that under the code such a presumption arises only if the person is supported by the prostitute, is of no relevance here. The legislature did not see fit to adopt the Model Penal Code provisions with respect to this offense. It contains no express requirement of proof that the defendant knew he was promoting prostitution. The section punishes conduct in which guilty knowledge is implicit. With respect to the appellant's conduct, it requires proof of an agreement or understanding that he would participate in the proceeds of prostitution activity. We are not shown that the legislature was without power to enact such a provision. In interpreting it, the Model Penal Code is irrelevant, its provisions being of a different nature.

The appellant contends that he was only a roommate sharing expenses with the two girls. While it is true that the appellant did not derive great profits from the activities of these girls, the testimony given at the trial was sufficient to support a jury finding that he invited them to live in his hotel room with the understanding that they would engage in prostitution and would turn their earnings over to him, and he would spend the money for their mutual benefit. The jury was further entitled to find that thereafter, and

until the time of their arrests, the three lived together in accordance with such an agreement and understanding.

While the evidence showed the appellant to be more of an opportunist than an entrepreneur, it also showed that he was willing to take advantage of minors, 10 years younger than himself, and to encourage them in a pursuit which the legislature has found to be detrimental to their welfare and that of the public, and further, to participate in the proceeds of that pursuit. His conduct, as evidenced by the testimony, was within the contemplation of the statute and, not being of a nature to warrant constitutional protection, was subject to the punishment prescribed.

■ Error is assigned to the refusal of an instruction that it was the appellant's theory of the case that he did not advance prostitution but merely associated with a prostitute, and that there was no agreement or understanding whereby he would participate in the proceeds of prostitutes. This proposed instruction did not expound any legal theory but rather embodied the factual arguments which the appellant's counsel would make to the jury. It is not suggested that under the instructions given, counsel was unable to argue these points. That being the case, it was not error to refuse the proposed instruction. *State v. Dana,* 73 Wn.2d 533, 439 P.2d 403 (1968).

The judgment is affirmed.

WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.

STAFFORD, J.—I dissent. Appellant was found guilty of violating RCW 9A.88.070(1)(b), *i.e.,* being one who "advances or profits from prostitution." The majority recognized, quite properly, that the statutory charge could not stand without further statutory definition and for this reason turned to RCW 9A.88.060(2) for a definition of "profits from prostitution." Unfortunately their search stopped short of a definition of the *key* word, "prostitution". A cursory reading of the applicable statutes and the briefs,

including an amicus brief, discloses that the legislature defined "prostitution" in RCW 9A.88.030.

Absent a constitutionally sound statutory definition of "prostitution" the charge brought under RCW 9A.88-.070(1)(b) must fall as void for vagueness because we no longer have a common–law definition in this state. In short, the constitutionality of RCW 9A.88.070(1)(b) is wholly dependent, for its constitutionality, upon the constitutionality of the definition of "prostitution" in RCW 9A.88.030.

*State v. Zuanich,* 92 Wn.2d 61, 593 P.2d 1314 (1979) holds that RCW 9A.88.030 (defining "prostitution") meets the constitutional standards of adequate prior notice of that conduct which will subject one to criminal penalty. However, the issue was resolved incorrectly.

No useful purpose will be served by repeating the dissent in *Zuanich* at page 68. However, for the reasons set forth at length therein, I am compelled to dissent in this case as well.

UTTER, C.J., concurs with STAFFORD, J.

Reconsideration denied July 11, 1979.