(No. 57811.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JAMES W. FOSTER, Appellee.

*Opinion filed December 1, 1983.*

Neil F. Hartigan, Attorney General, of Springfield, and Ronald C. Dozier, State's Attorney, of Bloomington (Ellen Flaum and Kenneth A. Fedinets, Assistant Attorneys General, of Chicago, and Robert J. Biderman and Garry W. Bryan, of the State's Attorneys Appellate Service Commission, of Springfield, of counsel), for the People.

Daniel D. Yuhas, Deputy Defender, and Gary R. Peterson, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellee.

JUSTICE UNDERWOOD delivered the opinion of the court:

Following a jury trial in the circuit court of McLean County the defendant, James Foster, was convicted of conspiracy to commit robbery, and sentenced to an extended term of six years' imprisonment. Based upon its interpretation of the Illinois conspiracy statute (Ill. Rev. Stat. 1981, ch. 38, par. 8—2) the appellate court reversed

in a Rule 23 order (110 Ill. App. 3d 1208). We granted the State's petition for leave to appeal.

On September 28, 1981, defendant initiated his plan to commit a robbery when he approached John Ragsdale in a Rantoul bar and asked Ragsdale if he was "interested in making some money." Defendant told Ragsdale of an elderly man, A. O. Hedrick, who kept many valuables in his possession. Although Ragsdale stated that he was interested in making money he did not believe defendant was serious until defendant returned to the bar the next day and discussed in detail his plan to rob Hedrick. In an effort to gather additional information, Ragsdale decided to feign agreement to defendant's plan but did not contact the police.

On October 1, defendant went to Ragsdale's residence to find out if Ragsdale was "ready to go." Since Ragsdale had not yet contacted the police he told defendant that he would not be ready until he found someone else to help them. Ragsdale informed the police of the planned robbery on October 3. Defendant and Ragsdale were met at Hedrick's residence the following day and arrested.

The appellate court determined that the conspiracy statute (Ill. Rev. Stat. 1981, ch. 38, par. 8—2) required actual agreement between at least two persons to support a conspiracy conviction. Reasoning that Ragsdale never intended to agree to defendant's plan but merely feigned agreement, the court reversed defendant's conviction.

On appeal to this court the State argues that under the conspiracy statute it suffices if only one of the participants to the alleged conspiracy actually intends to agree to commit an offense. Alternatively, the State contends that there was sufficient evidence to convict defendant even under the appellate court's interpretation of the statute.

The question is whether the Illinois legislature, in amending the conspiracy statute in 1961, intended to adopt the unilateral theory of conspiracy. To support a conspiracy conviction under the unilateral theory only one of the alleged conspirators need intend to agree to the commission of an offense. (See Burgman, *Unilateral Conspiracy: Three Critical Perspectives*, 29 DePaul L. Rev. 75 (1979).) Prior to the 1961 amendment the statute clearly encompassed the traditional, bilateral theory, requiring the actual agreement of at least two participants. (*People v. Borrelli* (1946), 392 Ill. 481, 493; see also *People v. Bryant* (1951), 409 Ill. 467, 469.) The relevant portion of the former statute is as follows:

> "If any *two or more persons* conspire or *agree together* *** to do any illegal act *** they shall be deemed guilty of a conspiracy." (Emphasis added.) (Ill. Rev. Stat. 1961, ch. 38, par. 139.)

The amended version of the statute provides:

> "*A person* commits conspiracy when, with intent that an offense be committed, *he agrees* with another to the commission of that offense." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 38, par. 8—2(a).

Since the statute is presently worded in terms of "a person" rather than "two or more persons" it is urged by the State that only one person need intend to agree to the commission of an offense. In support of its position the State compares the Illinois statute with the Model Penal Code conspiracy provision and the commentary thereto. The Model Penal Code provision is similar to section 8—2(a) in that it is also worded in terms of "a person":

> "*A person* is guilty of conspiracy with another person or persons to commit a crime if with the purpose of promoting or facilitating its commission *he*:
>
> (a) *agrees* with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime ***." (Emphasis added.) Model Penal Code sec. 5.03 (Tent. Draft No. 10,

1960).

The commentary following section 5.03 expressly indicates the drafters' intent to adopt the unilateral theory of conspiracy. More importantly, the comments specify the drafters' reason for abandoning the traditional language "two or more persons":

> "The definition of the Draft departs from the traditional view of conspiracy as an entirely bilateral or multilateral relationship, the view inherent in the standard formulation cast in terms of 'two or more persons' ***." Model Penal Code sec. 5.03, Comment, at 104 (Tent. Draft No. 10, 1960).

There is no question that the drafters of section 8—2(a) were aware of this provision since several references were made to the Model Penal Code in the committee comments to section 8—2. (Ill. Ann. Stat., ch. 38, par. 8—2, Committee Comments, at 458-60 (Smith-Hurd 1972).) Consequently, the State reasons that the drafters would not have deleted the words "two or more persons" if they had intended to retain the bilateral theory. Similar reasoning was employed in *State v. Marian* (1980), 62 Ohio St. 2d 250, 405 N.E.2d 267, and *State v. St. Christopher* (1975), 305 Minn. 226, 232 N.W.2d 798, where the courts were asked to interpret statutory provisions analogous to section 8—2(a). In each of those decisions it was determined that deletion of the words "two or more persons" from the State's conspiracy statute reflected a legislative intent to abandon the bilateral theory. The Ohio court, however, also relied to a considerable degree upon the absence from Ohio criminal law of a statute making solicitation to commit a crime an offense. Illinois does have such a statute. Ill. Rev. Stat. 1981, ch. 38, par. 8—1.

While impressed with the logic of the State's interpretation of section 8—2(a), we are troubled by the committee's failure to explain the reason for deleting the words "two or more persons" from the statute. The committee comments to section 8—2 detail the several changes in the law

of conspiracy that were intended by the 1961 amendment. (Ill. Ann. Stat., ch. 38, par. 8—2, Committee Comments, at 458-60 (Smith-Hurd 1972).) The comments simply do not address the unilateral/bilateral issue. The State suggests that the new language was so clear on its face that it did not warrant additional discussion. We doubt, however, that the drafters could have intended what represents a rather profound change in the law of conspiracy without mentioning it in the comments to section 8—2. Nor do we regard the reasoning of the Indiana Supreme Court in *Garcia v. State* (1979), 271 Ind. 510, 394 N.E.2d 106, cited by the State, as applicable here. Moreover, the precedential value of the Indiana, Ohio and Minnesota decisions is diminished when compared to other foreign decisions which, despite statutes which speak in terms of "a person," require actual agreement between at least two persons to support a conspiracy conviction. Compare Colo. Rev. Stat. sec. 18—2—201 (1973), with *People v. Johnson* (1975), 189 Colo. 28, 536 P.2d 44; Conn. Gen. Stat. Ann. sec. 53a—48 (1972), with *State v. Marra* (1978), 174 Conn. 338, 387 A.2d 550; Wis. Stat. Ann. sec. 939.31 (1958), with *State v. Copening* (1981), 103 Wis. 2d 564, 309 N.W.2d 850; 18 Pa. Cons. Stat. Ann. sec. 903 (1973), with *Commonwealth v. Lamb* (1983), 309 Pa. Super. Ct. 415, 455 A.2d 678; Fla. Stat. Ann. sec. 777.04 (1976), with *Ramirez v. State* (Fla. App. 1979), 371 So. 2d 1063.

As earlier noted, Illinois does have a solicitation statute which embraces virtually every situation in which one could be convicted of conspiracy under the unilateral theory. Moreover, the penalties for solicitation and conspiracy are substantially similar. There would appear to have been little need for the legislature to adopt the unilateral theory of conspiracy in light of the existence of the solicitation statute. Even though the Model Penal Code also contains a separate solicitation offense (Model Penal Code sec. 5.02 (Tent. Draft No. 10, 1960)) and still provides for the unilat-

eral theory, its commentary makes explicit its intent to do so. The absence of similar comments upon our statute seems difficult to explain if the intent was the same.

We cannot agree with the State's argument that section 8—2(b) of the statute supports a unilateral interpretation of section 8—2(a). Section 8—2(b) provides:

> "It shall not be a defense to conspiracy that the person or persons with whom the accused is alleged to have conspired:
>
> * * *
>
> (4) Has been acquitted, or
> (5) Lacked the capacity to commit an offense." (Ill. Rev. Stat. 1981, ch. 38, pars. 8—2(b)(4), (5).)

The State argues that subsections (4) and (5) focus on the culpability of only one of the conspirators and are therefore consistent with a legislative intent to adopt the unilateral theory. However, the committee comments clearly indicate that the limited purpose of those subsections is to avoid the recurrent problems inherent in conducting separate trials:

> "Previously, acquittal of all other conspirators absolved the remaining one, since, theoretically, there must be at least two guilty parties to a conspiracy. [Citation.] However, this rationale was rejected as being too technical and overlooking the realities of trials which involve differences in juries, contingent availability of witnesses, the varying ability of different prosecutors and defense attorneys, etc." Ill. Ann. Stat., ch. 38, par. 8—2, Committee Comments, at 459 (Smith-Hurd 1972).

Additionally, if the drafters had intended to adopt the unilateral theory in section 8—2(a), it would have been unnecessary to include section 8—2(b) in the statute, since the provisions of section 8—2(b) are encompassed by the unilateral theory.

It is also not without significance that two appellate court panels have construed section 8—2(a) as encompassing the bilateral theory of conspiracy (*People v. Hill* (1982), 108 Ill. App. 3d 716, and *People v. Ambrose* (1975), 28 Ill.

App. 3d 627) since its amendment in 1961. While it is true that a legislature's failure to amend a statute after judicial interpretation is not conclusive evidence of the correctness of that interpretation, such inaction is suggestive of legislative agreement. (*Union Electric Co. v. Illinois Commerce Com.* (1979), 77 Ill. 2d 364, 380; *People v. Hairston* (1970), 46 Ill. 2d 348, 353.) We agree with defendant that, here, the legislature's failure to act after the decisions in *Ambrose* and *Hill* lends considerable support to the conclusion that a bilateral theory of conspiracy was intended, particularly since *Ambrose* was a 1975 decision. We are also mindful of the rule of construction in Illinois which requires us to resolve statutory ambiguities in favor of criminal defendants. *People ex rel. Gibson v. Cannon* (1976), 65 Ill. 2d 366, 370-71.

For the above reasons we conclude that section 8—2(a) encompasses the bilateral theory of conspiracy.

Our conclusion requires consideration of the State's argument that there was sufficient evidence to convict defendant even under the bilateral theory of conspiracy. We find no basis for this assertion and agree with the appellate court that at best the jury could have found beyond a reasonable doubt only that Ragsdale considered defendant's offer before going to the police.

The judgment of the appellate court is therefore affirmed.

*Judgment affirmed.*