[No. 60864-4.    En Banc.    October 20, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. HERBERT
LARRY PACHECO, *Petitioner*.

*Peter A. Camiel* and *Mair, Camiel & Kovach,* for petitioner.

*Arthur D. Curtis, Prosecuting Attorney,* and *Richard Melnick, Deputy,* for respondent.

JOHNSON, J. — The Defendant, Herbert Pacheco, appeals his convictions for conspiracy to commit first degree murder and conspiracy to deliver a controlled substance. He contends he did not commit conspiracy within the meaning of RCW 9A.28.040 because no genuine agreement existed between him and his sole coconspirator, an undercover police agent. We hold RCW 9A.28.040 and RCW 69.50.407 require an actual agreement between two coconspirators, and, therefore, reverse his convictions for conspiracy to commit murder in the first degree and conspiracy to deliver a controlled substance.

## FACTS

Herbert Pacheco met Thomas Dillon in 1985, when Pacheco worked about 2 months for Dillon's private investigation firm. Pacheco bragged to Dillon about his involvement in illegal activities, including enforcement, collecting debts, procuring weapons, providing protection, and performing "hits".

In 1989, Dillon learned that Pacheco was a Clark County deputy sheriff. Dillon contacted the FBI and volunteered to inform on Pacheco. The FBI began an investigation of Pacheco. The Clark County Sheriff's office joined, and later directed the investigation.

The investigation involved the recording of conversations, face-to-face and over the telephone, between Dillon and Pacheco. During these conversations Dillon asked Pacheco to perform various jobs, including collections and information checks on individuals.

On March 26, 1990, according to a plan designed by the sheriff's office and the FBI, Dillon called Pacheco and told him he would like to meet to discuss a possible deal. Dillon and Pacheco met at a restaurant. Dillon said he had ties to the "Mafia" and offered Pacheco $500 in exchange for protection during a cocaine deal. Dillon told Pacheco that a buyer (an undercover FBI agent) would arrive shortly, and Pacheco was to protect Dillon during the transaction. Pacheco agreed. The undercover agent arrived and the purported drug transaction took place. Afterward, Dillon paid Pacheco $500.

The same scenario was replayed at a second purported drug transaction on April 2, 1990. Dillon again paid Pacheco $500. Later that night Dillon called Pacheco and pretended he had been shortchanged $40,000 in that afternoon's drug transaction. Dillon said he had been given $10,000 by his superiors to take care of the situation. Dillon agreed to meet Pacheco at a convenience store. At the store, Pacheco offered to kill the drug buyer for $10,000. Pacheco indicated if he had to kill anyone else, it would cost more. Pacheco proposed he go get his gun while Dillon located the drug buyer at his motel.

Dillon and Pacheco met at a lounge near the motel. They decided Pacheco would go to the lobby of the motel, call the buyer and convince him to come down to the lobby where Pacheco would then shoot him. Pacheco went to the lobby with a loaded gun, but he did not call the buyer's room. As Pacheco left the lobby, sheriff's deputies arrested him.

Pacheco contended he was collecting evidence to build a case against Dillon and he thought he was following police procedures.

Pacheco was charged with conspiracy to commit first degree murder, attempted first degree murder, two counts of unlawful delivery of a controlled substance, two counts of conspiracy to deliver a controlled substance, and official misconduct. The official misconduct charge was dismissed. The jury found Pacheco not guilty of attempted first degree murder, but convicted him on all other counts.

The Court of Appeals affirmed the convictions. We accepted review of the conspiracy convictions, limited to the issue of whether a conspiracy exists when the sole coconspirator is an undercover agent.

### ANALYSIS

The Defendant contends he did not commit conspiracy within the meaning of RCW 9A.28.040 because his sole coconspirator was an undercover police agent who never "agreed" to commit the crime of murder in the first degree.[1]

The Defendant argues the statute retains the common law, bilateral approach to conspiracy, which requires an actual agreement to commit a crime between the defendant and at least one other. Therefore, a government agent feigning agreement with the defendant does not constitute a conspiracy under the common law approach because no genuine agreement is reached. The Defendant asserts Washington is among those states whose statutes are patterned after the Model Penal Code but have been interpreted as adopting only a limited form of the code's unilateral approach, and retaining the requirement of a bilateral underlying agreement. *E.g., People v. Foster*, 99 Ill. 2d 48, 457 N.E.2d 405

---

[1] We note at the outset Pacheco was convicted of conspiracy to deliver a controlled substance pursuant to RCW 69.50.407, not the general conspiracy statute, RCW 9A.28.040. The State has not suggested or presented any argument that the requisite conspiracy under RCW 69.50.407 is contrary to or inconsistent with the agreement required under RCW 9A.28.040. *State v. Lynn*, 67 Wn. App. 339, 349, 835 P.2d 251 (1992). Thus, our construction of the conspiratorial agreement element in RCW 9A.28.040 is applicable to RCW 69.50.407. *Lynn*, 67 Wn. App. at 349.

(1983); *Williams v. State*, 646 S.W.2d 221 (Tex. Crim. App. 1983); *State v. Grullon*, 212 Conn. 195, 562 A.2d 481 (1989).

The State contends RCW 9A.28.040 follows the code's purely unilateral approach. Under the code, actual agreement is not required as long as the defendant believes another is agreeing to commit the criminal act. Therefore, a purported agreement between a government agent and a defendant would satisfy the code's unilateral conspiratorial agreement approach.

Adopted in 1975, as a part of the overhaul of the criminal code, RCW 9A.28.040 provides in part:

> (1) A person is guilty of criminal conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them takes a substantial step in pursuance of such agreement.
>
> (2) It shall not be a defense to criminal conspiracy that the person or persons with whom the accused is alleged to have conspired:
>
> (a) Has not been prosecuted or convicted; or
>
> (b) Has been convicted of a different offense; or
>
> (c) Is not amenable to justice; or
>
> (d) Has been acquitted; or
>
> (e) Lacked the capacity to commit an offense.

■■ In construing a statute, our primary objective is to carry out the intent of the Legislature. *Anderson v. O'Brien*, 84 Wn.2d 64, 67, 524 P.2d 390 (1974). When a term is not defined in a statute, the court may look to common law or a dictionary for the definition. *State v. Sanchez*, 73 Wn. App. 486, 488, 869 P.2d 1133 (1994); *Shoreline Comm'ty College Dist. 7 v. Employment Sec. Dep't*, 120 Wn.2d 394, 403, 842 P.2d 938 (1992). As a general rule, we presume the Legislature intended undefined words to mean what they did at common law. *In re Brazier Forest Prods., Inc.*, 106 Wn.2d 588, 595, 724 P.2d 970 (1986).

Subsection (1) of RCW 9A.28.040 expressly requires an *agreement*, but does not define the term. Black's Law Dictionary defines *agreement* as "[a] meeting of two or more minds; a coming together in opinion or determination; the coming together in accord of two minds on a given proposi-

tion". Black's Law Dictionary 67 (6th rev. ed. 1990). Similarly, *agreement* is defined in *Webster's* as "**1 a** : the act of agreeing or coming to a mutual agreement . . . **b** : oneness of opinion . . .". *Webster's Third New International Dictionary* 43 (1986). The dictionary definitions thus support the Defendant's argument.

Likewise, the common law definition of the agreement required for a conspiracy is defined not in unilateral terms but rather as a confederation or combination of minds. *State v. Casarez-Gastelum*, 48 Wn. App. 112, 116, 738 P.2d 303 (1987) (citing *Marino v. United States*, 91 F.2d 691, 693-98, 113 A.L.R. 975 (9th Cir. 1937), *cert. denied*, 302 U.S. 764 (1938)). A conspiratorial agreement necessarily requires more than one to agree because it is impossible to conspire with oneself. *Morrison v. California*, 291 U.S. 82, 92, 78 L. Ed. 664, 54 S. Ct. 281 (1934). We conclude that by requiring an agreement, the Legislature intended to retain the requirement of a genuine or bilateral agreement.

Subsection (2) provides the conspiratorial agreement may still be found even though the coconspirator cannot be convicted. In this sense, the statute incorporates a limited form of the code's unilateral conspiracy in that it is no longer necessary that agreement be proved against both conspirators. Thus, under subsection (2)'s unilateral approach, the failure to convict an accused's sole coconspirator will not prevent proof of the conspiratorial agreement against the accused. However, this does not indicate the Legislature intended to abandon the traditional requirement of two criminal participants reaching an underlying agreement.

■ Our case law supports this interpretation of RCW 9A.28.040. In *State v. Valladares*, 99 Wn.2d 663, 664 P.2d 508 (1983), two codefendants were charged with conspiracy to deliver cocaine. In a joint trial, one defendant was acquitted and the other, Valladares, was found guilty. *Valladares*, 99 Wn.2d at 670.

On appeal, the court held acquittal of Valladares' only alleged coconspirator mandated reversal of Valladares' conviction because the two outcomes were logically inconsistent.

The inconsistent verdicts to the charge of conspiracy in the same trial nullified the possibility that the two coconspirators reached an agreement, a necessary element of the conspiracy. We said:

> RCW 9A.28.040(2)(d) provides that it shall not be a defense to a charge of criminal conspiracy that the person with whom the accused is alleged to have conspired has been acquitted. In this regard, the Washington Legislature appears to have adopted a unilateral approach to conspiracy by focusing on the culpability of the individual actor. At the same time, however, RCW 9A.28.040(1) makes *an agreement* with one or more persons a necessary element of the crime of conspiracy.

*Valladares*, 99 Wn.2d at 670.

*Valladares* thus makes clear the Legislature adopted the unilateral approach to the limited extent set out in RCW 9A.28.040(2). However, the element of the "requisite corrupt agreement", or the bilateral agreement, is still necessary as set out in RCW 9A.28.040(1). *Valladares*, 99 Wn.2d at 671. Indeed, the essence of a conspiracy is the agreement to commit a crime. *State v. Dent*, 123 Wn.2d 467, 476, 869 P.2d 392 (1994) (citing *United States v. Jackson*, 435 F. Supp. 434, 439 n.4 (E.D.N.Y. 1976), *aff'd*, 560 F.2d 112 (2d Cir.), *cert. denied*, 434 U.S. 941 (1977)). We will not presume the Legislature intended to overturn this long-established legal principle unless that intention is made very clear. *Ashenbrenner v. Department of Labor & Indus.*, 62 Wn.2d 22, 26, 380 P.2d 730 (1963) (citing 50 Am. Jur. *Statutes* § 340, at 332 (1944)).

██ Additionally, the unilateral approach fails to carry out the primary purpose of the statute. The primary reason for making conspiracy a separate offense from the substantive crime is the increased danger to society posed by group criminal activity. *Dent*, 123 Wn.2d at 476 (citing Ira P. Robbins, *Double Inchoate Crimes*, 26 Harv. J. on Legis. 1, 27-29 (1989)). However, the increased danger is nonexistent when a person "conspires" with a government agent who pretends agreement. In the feigned conspiracy there is no increased chance the criminal enterprise will succeed, no continuing criminal enterprise, no educating in criminal practices, and no greater difficulty of detection. *United States v. Escobar de*

*Bright*, 742 F.2d 1196, 1199-1200 (9th Cir. 1984); *United States v. Rabinowich*, 238 U.S. 78, 88, 59 L. Ed. 1211, 35 S. Ct. 682 (1915).

Indeed, it is questionable whether the unilateral conspiracy punishes criminal activity or merely criminal intentions. Paul Marcus, *Conspiracy: The Criminal Agreement in Theory and in Practice*, 65 Geo. L.J. 925, 929-30 (1977). The "agreement" in a unilateral conspiracy is a legal fiction, a technical way of transforming nonconspiratorial conduct into a prohibited conspiracy. Dierdre A. Burgman, *Unilateral Conspiracy: Three Critical Perspectives*, 29 DePaul L. Rev. 75, 93 (1979). When one party merely pretends to agree, the other party, whatever he or she may believe about the pretender, is in fact not conspiring with anyone. Although the deluded party has the requisite criminal intent, there has been no criminal act. *Escobar de Bright*, 742 F.2d at 1199 (citing *Developments in the Law — Criminal Conspiracy*, 72 Harv. L. Rev. 920, 926 (1959)).

The federal courts agree. In *Sears v. United States*, 343 F.2d 139, 142 (5th Cir. 1965), the Court of Appeals established the rule that "as it takes two to conspire, there can be no indictable conspiracy with a government informer who secretly intends to frustrate the conspiracy". Every federal court which has since considered the issue has adopted this approach. *United States v. Derrick*, 778 F. Supp. 260, 265 (D.S.C. 1991), *rev'd on other grounds*, 16 F.3d 412 (4th Cir. 1994), *cert. denied*, 63 U.S.L.W. 3259 (U.S. Oct. 3, 1994) (No. 93-9228).

Another concern with the unilateral approach is its potential for abuse. In a unilateral conspiracy, the State not only plays an active role in creating the offense, but also becomes the chief witness in proving the crime at trial. *Escobar de Bright*, 742 F.2d at 1199-1200. We agree with the Ninth Circuit this has the potential to put the State in the improper position of manufacturing crime. At the same time, such reaching is unnecessary because the punishable conduct in a unilateral conspiracy will almost always satisfy the elements of either solicitation or attempt. The State will

still be able to thwart the activity and punish the defendant who attempts agreement with an undercover police officer.

The State argues the Legislature intended to adopt the code's purely unilateral approach, discarding the common law requirement of an actual agreement. The State relies on the Washington State Criminal Justice Training Comm'n, *Revised Criminal Code Training and Seminar Manual* (Gordon A. Golob & Gerald K. Mooney eds., 1976) in which the editors state:

> The new law is unilateral in its approach in that it requires the actor agree with one or more persons . . ..
>
> *Comment*-The purpose of the unilateral approach is to make it immaterial to the guilt of a conspirator that one or all the persons he has conspired with have not been or cannot be convicted. Present general law frequently holds otherwise, reasoning that if the definition of a conspiracy reads "agreement by two or more persons" to commit a crime, this means there must be at least two guilty conspirators. This statute avoids this result.

Washington State Criminal Justice Training Comm'n, ch. 9A.28 RCW *Anticipatory Offenses*, at 9A.28.040-3.

Contrary to the State's argument, the Mooney and Golob commentary is compatible with our interpretation of RCW 9A.28.040 in *State v. Valladares, supra.* The purpose of incorporating the unilateral approach into RCW 9A.28.040 was to obviate the prior law's implicit requirement of conviction of the coconspirators. Comment, *A Hornbook to the Code*, 48 Wash. L. Rev. 149, 210 (1972). Like Mooney and Golob, we interpreted RCW 9A.28.040 to allow a conspiracy to be found even though one conspirator is found guilty in one trial and the other conspirator is found not guilty in a separate trial. However, we refused to extend this aspect of the unilateral approach to disparate verdicts in the same trial, signaling our continued adherence to the requirement of an underlying bilateral agreement. *Valladares*, 99 Wn.2d at 670-71.

Even if the Mooney and Golob commentary can be read as endorsing a purely unilateral approach, the commentary does not necessarily reflect the Legislature's intent in pass-

ing RCW 9A.28.040. The synopsis and commentary was compiled and edited by Mooney and Golob as an aid to analysis of the newly adopted RCW Title 9A, not as a definitive text. The commentary merely reflects the personal opinions of the two editors on the state of the law at that time. *State v. Yancy*, 92 Wn.2d 153, 158, 594 P.2d 1342 (1979). Since its publication, three of the four states identified by the commentary as cross references adopting conspiracy statutes similar to ours have interpreted their statutes as retaining the requirement of a bilateral agreement. *People v. Foster*, 99 Ill. 2d 48, 457 N.E.2d 405 (1983); *People v. Anderson*, 418 Mich. 31, 340 N.W.2d 634 (1983); *State v. Robinson*, 213 Conn. 243, 567 A.2d 1173 (1989).

In sum, the State has not persuaded us the Legislature intended to abandon the traditional requirement of an actual agreement. We hold RCW 9A.28.040 and RCW 69.50.407 require the defendant to reach a genuine agreement with at least one other coconspirator. The Defendant's convictions for conspiracy to commit murder in the first degree and conspiracy to deliver a controlled substance are reversed.

UTTER, DOLLIVER, SMITH, and MADSEN, JJ., concur.

DURHAM, J. (dissenting) — The jury found that Herbert Pacheco, an aspiring hit man, planned a murder for money. Moreover, he took a substantial step toward that objective. Yet the majority overturns his conviction for conspiracy to commit murder[2] solely because he conspired with a government agent rather than with another hit man. The Washington conspiracy statute does not require a co-conspirator to be a nongovernment actor. In fact, the statute explicitly envisages so-called unilateral conspiracies, as the majority admits. Because neither our case law, the statute, nor the

---

[2]Pacheco was also convicted of conspiracy to deliver a controlled substance. Pacheco's criminal aspirations are all the more appalling in light of his position of public trust as a Clark County deputy.

rationale of conspiracy crimes compels the result arrived at by the majority, I dissent.

We accepted review solely to determine whether Washington's conspiracy statute countenances unilateral conspiracies. Yet the majority fails to provide even a cursory analysis of the essential differences between the bilateral and unilateral approaches to conspiracy. The bilateral approach asks whether there is an agreement between two or more persons to commit a criminal act. Its focus is on the content of the agreement and whether there is a shared understanding between the conspirators. The unilateral approach is not concerned with the content of the agreement or whether there is a meeting of minds. Its sole concern is whether the agreement, shared or not, objectively manifests the criminal intent of at least one of the conspirators. The majority does not even mention this crucial difference, and instead merely assumes that all conspiracies must be bilateral. In other words, the majority assumes precisely what it is supposed to prove; it begs the question.

The result is a tangle of inaccuracies. First, the majority repeatedly contends that our decision in *State v. Valladares*, 99 Wn.2d 663, 664 P.2d 508 (1983) either adopted (majority, at 156) or supports (majority, at 155) the bilateral theory of conspiracies. That is not true. In fact, *Valladares* explicitly reserved the question. 99 Wn.2d at 671 ("We need not decide here what result might have been reached had" the defendant been charged with conspiring with two government agents.) *Valladares* decided only that, in a *joint* trial of coconspirators, the jury verdict is inconsistent if one defendant is convicted of conspiracy while "his alleged coconspirator has been found not to have entered into any alleged agreement and no conspiracy with an unnamed coconspirator has been alleged." 99 Wn.2d at 670. *Valladares* is about jury verdict consistency. The closest *Valladares* comes to commenting on the conspiracy statute itself is to note that "the Washington Legislature appears to have adopted a unilateral approach to conspiracy by focusing on the culpability of the individual actor." *Valladares*, at 670.

Next, the majority portrays the unilateral approach to conspiracy as an outdated relic from a bygone era. The Model Penal Code endorses unilateral conspiracies, the majority admits, but "[e]very federal court which has since considered the issue" has adopted the bilateral approach. Majority, at 157. The majority neglects to mention that all the federal courts adopting bilateral conspiracy are construing a different statute, one whose language requires bilateral conspiracies. *See* 18 U.S.C. § 371 ("If two or more persons conspire . . . to commit any offense against the United States"). In contrast, the Model Penal Code defines conspiracy "in terms of one person's agreeing *with* another, rather than in terms of an agreement *among* or *between* two or more people." *United States v. Rosenblatt*, 554 F.2d 36, 38 n.2 (2d Cir. 1977).

The code embodies a significant change in emphasis. In its view, the major basis of conspiratorial liability is not the group nature of the activity but the firm purpose of an individual to commit a crime which is objectively manifested in conspiring. *See* Model Penal Code § 5.03(1) cmt. at 104-05 (Tentative Draft No. 10, 1960). The Washington conspiracy statute tracks the Model Penal Code's language rather than the "two or more persons" language of the general federal conspiracy statute. *Compare* RCW 9A.28.040 *with* Model Penal Code § 5.03. In any event, far from being antiquated or obsolete, the "movement toward a unilateral theory of the crime is the modern trend in conspiracy law." Patrick A. Broderick, Note, *Conditional Objectives of Conspiracies*, 94 Yale L.J. 895, 906 n.64 (1985). *See also* Dierdre A. Burgman, *Unilateral Conspiracy: Three Critical Perspectives*, 29 De-Paul L. Rev. 75, 75 n.3 (1979) (listing 30 states that have adopted statutes conforming to Model Penal Code's unilateral approach).

A comparison of the revised Washington conspiracy statute with its predecessor is far more revealing of legislative intent than the majority's simplistic and premature resort to

dictionary definitions.[3] *See Clark v. Pacificorp*, 118 Wn.2d 167, 822 P.2d 162 (1991) (legislative intent is to be ascertained from the statute as a whole and from the sequence of all statutes relating to the same subject matter). The predecessor statute used the phrase "[w]henever two or more persons shall conspire", which parallels the federal conspiracy statute and clearly requires bilateral conspiracy. Former RCW 9.22.010 (repealed in 1975). The revised statute, in contrast, tracks the definitional language of the Model Penal Code, which adopts unilateral conspiracy.[4]

> Under a unilateral formulation, the crime of conspiracy is committed *when a person agrees* to proceed in a prohibited manner; under a bilateral formulation, the crime of conspiracy is committed *when two or more persons* agree to proceed in such manner.

Peter Buscemi, Note, *Conspiracy: Statutory Reform Since the Model Penal Code*, 75 Colum. L. Rev. 1122, 1136 (1975). The contrast between the prior and the present statute is clear, precise, and determinative.

Next, the majority constructs a straw man by claiming that the primary purpose of conspiracy is "the increased danger to society posed by group criminal activity". Majority, at 156. Preventing group criminal activity is the rationale behind bilateral conspiracy, but that rationale was decisively

---

[3]The majority relies on a vague definition from Black's Law Dictionary of "agreement" as "[a] meeting of two or more minds" (majority, at 154) that is equally applicable to conspiracies and contracts. Not only does this ignore the far more relevant question of the actual changes in the sequence of statutes, it also disregards the crucial differences between a conspiracy and a contract. 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 6.4, at 71 (1986) ("One might suppose that the agreement necessary for conspiracy is essentially like the agreement or 'meeting of the minds' which is critical to a contract, but this is not the case.").

[4]As the code's commentary states, the new definition "departs from the traditional view of conspiracy as an entirely bilateral or multilateral relationship, the view inherent in the standard formulation cast in terms of 'two or more persons' agreeing or combining to commit a crime. Attention is directed instead to each individual's culpability by framing the definition in terms of the conduct which suffices to establish the liability of any given actor, rather than the conduct of a group of which he is charged to be a part". Model Penal Code § 5.03(1) cmt., at 104-05 (Tentative Draft No. 10, 1960).

rejected by the Model Penal Code. At best, controlling group criminal activity is only one rationale for conspiracy statutes.

> A bilateral theory of conspiracy and the rigid standard of mutuality that it demands . . . are inconsistent with the recognition of an independent rationale for conspiracy law based on a conspirator's firm expectation of committing a crime.

Broderick, 94 Yale L.J. at 906 n.64.

The majority compounds its own confusion by contending that unilateral conspiracies are factually impossible and therefore presumptively invalid. Majority at 157 ("When one party merely pretends to agree, the other party, whatever he or she may believe about the pretender, is in fact not conspiring with anyone."). This argument amounts to the truism that it is factually impossible to have a "meeting of minds" on the commission of a future crime if one of the minds is a government agent who does not intend to commit the criminal act. However, a "meeting of minds" is not a prerequisite of unilateral conspiracy. In any event, factual impossibility is not a recognized defense. *See* 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 6.3(2), at 42 (1986). The majority does nothing more than restate the discredited assumption that all conspiracies must be bilateral because conspiracy statutes attempt to target only group criminal activity.

Finally, I share the majority's concern about the potential for abuse of unilateral conspiracy. However, the majority fails to take into consideration the effect of the entrapment defense. The potential for abuse is further restricted by the statute itself, which requires not only an agreement to engage in criminal conduct but also "a substantial step in pursuance of such agreement". RCW 9A.28.040(1). *See also* Buscemi, 75 Colum. L. Rev. at 1153-54 (Washington's substantial step requirement provides stricter standard for overt act than majority of states adopting unilateral conspiracy). In the end, the majority succeeds only in providing a superfluous protection to criminal defendants at the price

164

of hamstringing government attempts to nip criminal acts in the bud.

ANDERSEN, C.J., and BRACHTENBACH and GUY, JJ., concur with DURHAM, J.