**2026 IL 131240**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

(Docket No. 131240)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
CHRISTIAN L. SHEPHERD, Appellant.

*Opinion filed March 19, 2026.*

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.

Chief Justice Neville and Justices Overstreet, Holder White, Cunningham, and Rochford concurred in the judgment and opinion.

Justice Tailor took no part in the decision.

**OPINION**

¶ 1 A Will County jury found defendant, Christian L. Shepherd, guilty of two counts of solicitation of murder for hire (720 ILCS 5/8-1.2(a) (West 2010)) and five counts of solicitation of first degree murder (*id.* § 8-1(b)). The five solicitation of first degree murder convictions merged with the two solicitation of murder for hire

convictions. The trial court sentenced defendant to consecutive terms of imprisonment of 39 and 37 years.

¶ 2    On appeal, defendant argued that his convictions for solicitation of murder for hire should be reversed. He contended the evidence was insufficient to support the solicitation of murder for hire convictions because the State failed to prove he "procured another" to commit first degree murder given that the person he solicited—a jailhouse informant—never intended to carry out or facilitate the murders. The appellate court affirmed defendant's convictions and sentences. 2024 IL App (3d) 230283-U.

¶ 3    We granted defendant's petition for leave to appeal to determine whether the offense of solicitation of murder for hire requires proof that both defendant and the person being offered compensation to commit first degree murder share a genuine intent to commit first degree murder. For the reasons that follow, we hold that a defendant procures another for purposes of solicitation of murder for hire regardless of the true intent of the other individual. We therefore affirm the judgment of the appellate court.

¶ 4                                    BACKGROUND

¶ 5    The facts are not in dispute and are set forth in detail in the appellate court's order. Only those facts necessary to give an overview of the case and to address the issue presented to this court will be set forth here.

¶ 6    On October 28, 2010, a grand jury returned an indictment charging defendant with two counts of solicitation of murder for hire (720 ILCS 5/8-1.2(a) (West 2010)) and five counts of solicitation of first degree murder (*id.* § 8-1(b)). As to the two counts of solicitation of murder for hire, count I alleged defendant procured Daniel Robinson pursuant to an agreement or understanding to murder A.V., R.V.,[1] and Franklin Bryant and that defendant would pay Robinson a sum of money. Count II alleged the same conduct but named Detective Renee Maly and Detective Jason Opiola as the intended victims. A jury trial ensued, and the evidence established the following facts relevant to this appeal.

---

[1]R.V. is not a minor, but we use initials to protect the privacy of A.V.

¶ 7        On May 1, 2010, police arrested defendant and placed him in the Will County jail in response to allegations of sexual abuse made by A.V. and her mother R.V. against defendant. While in jail, defendant approached two different inmates about compensating them to facilitate the murder of A.V. and others involved in defendant's sexual abuse charges. Defendant first approached fellow inmate Franklin Bryant, offering Bryant money to murder A.V., R.V., Detective Maly, and Detective Opiola. Bryant ultimately feigned agreement and, unbeknownst to defendant, informed Detective Maly of defendant's offer. Bryant cooperated with an investigation ultimately leading to charges against defendant in a separate case.

¶ 8        The subject of the instant case is defendant's subsequent offer to fellow inmate Daniel Robinson. Like Bryant, Robinson informed officers of defendant's offer to compensate Robinson to facilitate the murders of A.V., R.V., Detective Maly, and Detective Opiola. Defendant also offered Robinson compensation to facilitate the murder of Bryant, who defendant said "r[a]n off" with defendant's money.

¶ 9        Robinson never planned on facilitating the murders and instead cooperated with an investigation, during which Robinson agreed to wear a device to record his conversations with defendant. In those conversations, defendant and Robinson discussed logistics of the murders as well as payment. Defendant ultimately executed two documents authorizing Robinson to use around $18,000 from credit cards, and defendant signed over the ownership of his vehicle to Robinson.

¶ 10       The jury found defendant guilty of both counts of solicitation of murder for hire (counts I and II) as well as the five counts of solicitation of murder. The five solicitation of murder convictions merged with the solicitation of murder for hire convictions. The circuit court sentenced defendant to a 39-year sentence and a consecutive 37-year sentence.

¶ 11       Defendant appealed, arguing that the evidence was insufficient to prove he committed solicitation of murder for hire. 2024 IL App (3d) 230283-U, ¶ 23.[2] Specifically, defendant contended he did not "procure" Robinson to commit first degree murder, given Robinson only feigned agreement. *Id.* ¶ 32. According to defendant, proving he procured another to commit first degree murder required a

_____

[2]Defendant also challenged the sufficiency of the evidence on other grounds, and he argued that the jury instructions were improper. Neither argument is raised in this court.

bilateral agreement, meaning Robinson needed to agree to commit first degree murder. *Id.* The appellate court disagreed (*id.*), finding that " '[p]rocurement of another to commit murder pursuant to an agreement where a defendant agrees with a government agent feigning agreement is sufficient to support a conviction of solicitation of murder for hire' " (*id.* ¶ 33 (quoting *People v. Breton*, 237 Ill. App. 3d 355, 362 (1992))). The appellate court affirmed defendant's convictions and sentences. *Id.* ¶ 43.

¶ 12    This court allowed defendant's petition for leave to appeal pursuant to Illinois Supreme Court Rule 315(a) (eff. Dec. 7, 2023).

¶ 13                                    ANALYSIS

¶ 14    Before this court, defendant contends the evidence is insufficient to prove he committed the offense of solicitation of murder for hire because he never procured Robinson to murder A.V., R.V., Bryant, Detective Opiola, and Detective Maly. His sufficiency of the evidence challenge is one of statutory interpretation. He argues the offense requires he procure another, which can only occur if the individual he procured has a genuine intent to commit murder. Given the issue presented requires only statutory interpretation, our review is *de novo*. *People v. Devine*, 2023 IL 128438, ¶ 19. When conducting statutory interpretation, our primary objective is to ascertain and give effect to the intent of the legislature. *People v. Simpson*, 2015 IL 116512, ¶ 29. The best indicator of legislative intent is the statutory language, given its plain and ordinary meaning. *People v. Easley*, 2014 IL 115581, ¶ 16.

¶ 15    We begin with the specific statutory language at issue. Section 8-1.2(a) of the Criminal Code of 1961 (720 ILCS 5/8-1.2(a) (West 2010)) defines the elements of solicitation of murder for hire as follows:

> "A person commits the offense of solicitation of murder for hire when, with the intent that the offense of first degree murder be committed, he or she *procures* another to commit that offense pursuant to any contract, agreement, understanding, command, or request for money or anything of value." (Emphasis added.) *Id.*

- 4 -

Defendant and the State disagree on the meaning of the term "procure." In defendant's view, procure should be interpreted as limited to bilateral agreements, meaning both parties to the transaction intend to commit murder. Defendant argues that the procurement element should be treated the same way agreements are treated for the offense of conspiracy, which requires a bilateral agreement. The State contends that solicitation of murder for hire should be treated the same as all solicitation offenses and that *procure* should be interpreted as embracing unilateral agreements, making defendant's intent the sole focus of the inquiry.

¶ 16    As part of determining the plain meaning of the statutory text, courts "view the statute as a whole" and "in connection with other relevant statutory provisions." *People v. Fair*, 2024 IL 128373, ¶ 61. The dispute over whether a bilateral or unilateral agreement applies to solicitation of murder for hire invokes an important distinction between solicitation offenses and the related offense of conspiracy. Generally, a conspiracy requires a bilateral agreement, whereas a unilateral agreement is sufficient for solicitation offenses. We therefore deem it appropriate to review the related offenses of conspiracy and solicitation to shed light on the meaning of the term *procure*.

¶ 17    "A person commits the offense of conspiracy when, with intent that an offense be committed, he or she agrees with another to the commission of that offense" and there is an act made by the defendant or a coconspirator in furtherance of that agreement. 720 ILCS 5/8-2(a) (West 2010). Conspiracy embraces only bilateral agreements. *People v. Foster*, 99 Ill. 2d 48, 55 (1983). This means an agreement between a defendant and a government agent feigning agreement cannot support a conspiracy conviction. *Id.*

¶ 18    Solicitation, by contrast, is "often *** the proximate cause of a conspiracy" (emphasis omitted) (*People v. Kauten*, 324 Ill. App. 3d 588, 592 (2001)) and can be viewed "as an attempted conspiracy" (*Breton*, 237 Ill. App. 3d at 361). "A person commits the offense of solicitation when, with intent that an offense be committed, other than first degree murder, he or she commands, encourages, or requests another to commit that offense." 720 ILCS 5/8-1(a) (West 2010). Similarly, solicitation of murder occurs when the solicited offense is first degree murder. *Id.* § 8-1(b). Unlike conspiracy, solicitation and solicitation of murder encompass unilateral agreements. *Foster*, 99 Ill. 2d at 53 (noting the Illinois solicitation statute embraces

a unilateral theory). Therefore, an agreement between defendant and a government agent feigning agreement is sufficient to support a solicitation or solicitation of murder conviction.

¶ 19    We now turn to an interpretation of the term "procure" within section 8-1.2(a) and whether that term encompasses unilateral agreements. The legislature did not define the term *procure*. When a term is not defined in the statute, it is presumed the legislature intended the term to have its ordinary and popularly understood meaning. *People v. Cardamone*, 232 Ill. 2d 504, 513 (2009). Black's Law Dictionary defines *procure* as:

> "1. To obtain (something), esp. by special effort or means.
>
> 2. To achieve or bring about (a result).
>
> 3. To obtain a sexual partner for another, esp. an unlawful partner such as a minor or a prostitute." Black's Law Dictionary (12th ed. 2024).

Similarly, the Merriam-Webster Dictionary defines "procure" as, "to get possession of (something) : to obtain (something) by particular care and effort," "to bring about or achieve something by care and effort," and "to obtain (someone) to be employed for sex (as for an individual or in a brothel)." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/procure (last visited Feb. 11, 2026) [https://perma.cc/K6VR-BJQG]. Given these similar definitions, we find the ordinary and popular meaning of the term *procure* as used in section 8-1.2(a) is to obtain something by special effort, care, or means. We further find the term *procure* used in this context encompasses unilateral agreements.

¶ 20    We first observe that the statutory text names the offense *solicitation* of murder for hire, which suggests the legislature intended the offense to contemplate unilateral agreements.[3] We also note how the statute is inherently unilateral in

---

[3]Contrary to defendant's argument, noting the legislature's choice in name for the offense is not an inappropriate reliance on the statute's "title." *Cf. Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 505-06 (2000) (noting titles are only of use if it sheds light on ambiguous language in the statutory text, and the title cannot undo what the text makes plain). The name solicitation of murder for hire is not only included in

- 6 -

nature with an exclusive focus on defendant. The *mens rea* element is placed before the term "procures," focusing on defendant's "intent that the offense of first degree murder be committed." 720 ILCS 5/8-1.2(a) (West 2010). The *actus reus* likewise focuses on what defendant did—procured another to commit murder—and how he did it—pursuant to "contract, agreement, understanding, command, or request for money or anything of value." *Id.* The statute also does not qualify the terms "contract," "agreement," or "understanding" (*id.*), which distinguishes text from a conspiracy offense where a defendant "agrees with *another* to the commission of that offense" (emphasis added) (*id.* § 8-2(a)). Suffice it to say, nothing within the general understanding of the term *procure* or the statutory text implies the person procured genuinely intends to carry out the murders. To the contrary, the text places criminal liability exclusively on the person procuring another.

¶ 21    Reading section 8-1.2(a) as applying to unilateral agreements also fits squarely with how the legislature treats punishing criminal conduct involving compensation or promise of compensation. For example, murder is generally subject to a sentencing range of 20 to 60 years (730 ILCS 5/5-4.5-20(a) (West 2024)), but the sentence can be enhanced to a term of life imprisonment if defendant "procured another other to commit the murder for money or anything of value" (*id.* § 5-8-1(a)(1)(b-5)(3)). Similarly, the legislature classified solicitation of murder as a Class X felony with a sentencing range of 15 to 30 years (720 ILCS 5/8-1(c)) (West 2024)), whereas solicitation of murder for hire is a Class X felony with a 20- to 40-year sentencing range (*id.* § 5/8-1.2(b)). This suggests the legislature recognized a more serious social danger posed by a defendant who not only seeks out another to commit murder but also uses his assets to persuade the other to do so.

¶ 22    Contrary to defendant's argument, interpreting solicitation of murder for hire as applying to unilateral agreements does not improperly substitute the term *procure* with the term *solicit*. In making his argument, defendant contends that the legislature used the term *procure* to distinguish the offense from solicitation of murder. In defendant's view, if the legislature intended solicitation of murder for hire to apply to unilateral agreements, then it would have used the word *solicit*, rather than *procure*, in defining the offense. Given this choice in wording,

the title, but it is included in the statutory definition itself. In any event, the legislature's choice in name only confirms what the plain language makes clear.

defendant argues that solicitation of murder for hire should be treated like a conspiracy, requiring a bilateral agreement.

¶ 23   The flaw in defendant's argument is that it is premised on the mistaken belief that the distinction between the two offenses lies in the nature of the agreement at issue (bilateral versus unilateral). While this court has rejected the notion that the terms *solicit* and *procure* are interchangeable, that does not mean the distinction between the two lies in the intent of the parties involved. *People v. Cuadrado*, 214 Ill. 2d 79 (2005) (finding indictment flawed where it used the word "solicited" instead of "procured" in charging defendant). Both terms are related, but the term *procure* involves special effort, care, or means. The special effort or means in this context is compensation. That can be done by paying or promising to compensate another pursuant to contract, agreement, and understanding or pursuant to the command or request of another. See 720 ILCS 5/8-1.2(a) (West 2010). Compensation is an element notably absent from solicitation of murder. See *id.* 8-1(b). Procuring another is also accomplished by different means than soliciting another. Solicitation of murder can only be done by a defendant who commands, encourages, or requests another to commit murder. *Id.* § 8-1(a), (b). However, a defendant procures another by paying or promising to pay pursuant to contract, agreement, and understanding or by paying or promising to pay in response to another's command or request for compensation. *Id.* § 8-1.2(a). Consequently, the difference in the two terms in this context is compensation and the methods used, not whether the other party genuinely agrees to commit the crime.

¶ 24   Accordingly, we hold that the offense of solicitation of murder for hire encompasses unilateral agreements and that a defendant can be found guilty of the offense, even if the person defendant procures to commit murder does not genuinely intend to follow through with the plan. See *Breton*, 237 Ill. App. 3d at 362; see also *People v. Smith*, 2025 IL App (1st) 220116, ¶¶ 26-31. Applying the proper interpretation to the facts of this case, we find the evidence is sufficient to prove defendant committed both counts of solicitation of murder for hire where he offered to and did compensate Robinson under the belief Robinson would facilitate the murders of A.V., R.V., Bryant, Detective Opiola, and Detective Maly.

## CONCLUSION

We affirm the judgment of the appellate court and hold that a unilateral agreement can support a conviction for the offense of solicitation of murder for hire.

Judgments affirmed.

JUSTICE TAILOR took no part in the consideration or decision of this case.